NEWTON H. TENNERY

*v.*

JAMES H. NICHOLSON.

1. MORTGAGE—*deed as a security.* Where land is conveyed to another by a deed, absolute on its face, but to secure the payment of money, and the grantee gives the debtor a written agreement to convey the land on payment of the debt, the conveyance will be a mortgage only, and its character will not be changed by giving a new note and taking a new agreement to convey, in which time is made of the essence of the contract, and which provides that in case of failure to pay on the day named, "the intervention of equity" shall be forever barred;—the relation of mortgagor and mortgagee will still exist.

2. SAME—*equity of redemption, how defeated.* A mortgagor's equity of redemption in land can not be cut off by a provision in a defeasance to a deed given to secure a debt, making a failure to pay when due have that effect. It can only be done by a foreclosure.

3. CONSIDERATION. Where a party, who had his land conveyed to secure a debt, and had failed to make payment when the debt matured, under the belief that his right to redeem was gone, promised to pay a sum greatly in excess of what he owed, and took another agreement for a deed upon payment of the latter sum, it was held, that such last promise was not binding on him for want of a consideration, his right to redeem not being gone.

APPEAL from the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Mr. ROBERT DOLLARD, and Messrs. HANNAMAN & WILLOUGHBY, for the appellant.

Messrs. DOUGLASS & HARVEY, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

There is very little disagreement as to the facts of this case.  In 1863 complainant bought the land which is the subject of this litigation, from Horace Brown, for the sum of $1,500.  His agreement was to pay the money on receiving a deed, which he did do, and the grantor placed him in possession of the property, which he has since retained. Not having all the money on hand, complainant borrowed of defendant $1,100, with which to make the payment for the land, and as security caused the land to be conveyed directly to defendant instead of himself, and took back from him a bond or agreement to reconvey the land to him on payment of the sum borrowed, with ten per cent interest per annum, which indebtedness was evidenced by a promissory note payable five years after date.  Some payments were made on this note, but it was not all paid within the five years.  After the note became due, and perhaps at the request of defendant, complainant undertook to borrow money on the land with which to discharge his indebtedness to defendant, and for that purpose he applied to a party for a loan, who advised him to renew his note to defendant, and to obtain an appraisement of the land, and he would endeavor to assist him in procuring the desired loan.  Accordingly, complainant applied to defendant to renew his note, which was readily agreed to, and it was renewed for sixty days.  The original bond or agreement for a deed was then taken up and a new one given.  The last agreement contained a clause declaring time to be of the essence of the contract, and, in case of failure to make payment of the note promptly at maturity, " the intervention of equity is forever barred."  Whether the original agreement contained such a clause is left somewhat in doubt by the evidence.  It was lost or destroyed, and could not be produced on the trial; but both complainant and his son, who are familiar with its contents, are quite positive it contained no such clause.  On the other hand, defendant thinks

30—87 ILL.

it did, but is not entirely confident. Complainant protests he did not know the latter agreement contained any provision making time of the essence of the contract, and there is no evidence that tends to show he did know of that clause in the agreement. Under the view we will take of the case, it is not a matter of much importance whether either agreement contained any such provision, or whether complainant was aware such a clause was inserted in the last agreement.

Before the last note became due, complainant was advised by the party to whom he had applied for a loan of money upon his land that he would be unable to get it for him. About the same time complainant had a cash offer for his farm. It was less than he thought it was worth, but if defendant insisted on having his money when it would become due, he would take it. By accepting the offer he could pay off the incumbrance upon his land, and have a considerable sum left for his own use. On receiving this offer complainant says he informed defendant of it, and was advised by defendant not to take it, as it was less than the farm was worth, and, as he did not want all the money coming to him, but could get along with a few hundred dollars which he thought he could procure elsewhere, not to sell at the price offered. Relying upon the assurances of defendant for further indulgence, complainant declined to sell his land at the price he was then offered. Defendant admits in his testimony that he knew complainant had an offer for his land, but the amount he did not know, and that he said to him, "Are you going to give it away? I have made arrangements, and don't want the money."

Nothing further seems to have occurred between the parties until the note of the date of September, 1870, given at sixty days for $1071.85, had become due, when complainant applied to defendant to know what further arrangements he should make, when he was told by him "that several persons had advised him to take the land." At that interview defendant would not consent to convey the land to complainant except upon the payment of $2500, which was

more than double the amount justly due him. Negotiations continued between the parties until 1872, when a verbal agreement was concluded between them, by which defendant agreed to convey the land to complainant on payment of $2,000, in installments of $500 each, with interest at the rate of ten per cent per annum, payable on the first day of January, 1873, and annually thereafter. The several installments were paid as they became due, except the last one, maturing on January 1, 1875; but, as we understand the evidence, the interest was paid on the last installment up to the latter date. Alleging that he had already paid defendant more than the sum borrowed of him, with the interest, complainant then filed this bill to compel defendant to convey the legal title of the land, which he had held as mortgage security, to him as he had agreed to do. The court decreed a conveyance of the land on payment of the last installment of $500, with the interest due under the verbal agreement, and complainant being dissatisfied with the terms on which relief was decreed, brings the case to this court on appeal.

That the deed under which defendant held the land, although absolute in form, was a mortgage, admits of no doubt. It was so expressed in the contemporaneous agreement executed by defendant and delivered to complainant, which obligated defendant, on payment of the sum borrowed of him by complainant, with the interest thereon, to convey the land to him. The original character of the transaction was in no manner changed by the renewal of the note for the balance due, and by accepting a new agreement as to making a deed on payment of the sum to become due, notwithstanding it contained a clause declaring time of payment material, and of the essence of the contract, and in case of failure, the "intervention of equity is forever barred." The relation of mortgagor and mortgagee still continued as before.

It is apprehended the mortgagor's equity of redemption can not be cut off in that way, even had the provision con-

tained in the defeasance been inserted in the deed itself.
In *Willets* v. *Burgess*, 34 Ill. 494, it was said, " the mere
fact the mortgage declared the title should vest in the
mortgagee, if prompt payment should not be made, could
not bar a redemption ; that could only be done by a fore-.
closure." The defeasance in this case contains no provis-
ion the title should vest absolutely in defendant in the
event of non-payment of the amount due within sixty days,
and in this respect it is more favorable to complainant than
in the case cited. The words employed in the defeasance
certainly never conveyed any such idea to the minds of the
contracting parties, and the legal effect does not bar a
redemption.

The case in hand bears no analogy to a sale of land
where the vendor may declare the terms upon which he will
sell his property by making time of payment material and
of the essence of the contract, and hence the authorities
cited are not in point, and illustrate no phase of the case.

In regard to the verbal agreement to pay defendant
$2,000 if he would convey the land to complainant under
his agreement, it was founded upon no consideration and
was not binding in law, and hence complainant was under
no legal obligation to perform it. All complainant was
bound to pay was the remainder of the sum borrowed of
defendant, with agreed interest. When that was done he
was entitled to a deed for his land. His right of redemp-
tion existed until it should be barred in some mode known
to the law, which was never done.

The decree will be reversed, and the cause remanded, with
directions to the court to ascertain by a reference to the
master in chancery whether the money borrowed of defend-
ant in the first instance has been fully paid, with the stipu-
lated interest, and, if so, to decree a conveyance of the
land to complainant, but, if not, then upon payment of any
balance that may be found to be due, to decree the same
relief.

*Decree reversed.*