### D. B. JACKSON *et al.*

*v.*

### JOHN LYNCH.

*Filed at Ottawa May 16, 1889—Rehearing denied October Term, 1889.*

1. MORTGAGES—*of a deed absolute in form.* A debtor conveyed real estate to his creditor by deed absolute in form, and also gave his note for the sum found due on settlement, payable in two years, with interest. The grantee at the same time gave the grantor a contract for a re-conveyance of the premises upon payment of the note and interest. This contract gave the creditor the right to possession, and to rent or lease the premises, and further provided that the creditor should pay all taxes and make necessary repairs from the rents received, applying the surplus rents upon the note. It was *held*, that the deed, note and contract to re-convey, all constituted but one transaction, which was a mortgage, and not an absolute sale and re-sale, and that the relation of the creditor to the debtor was that of a mortgagee in possession.

2. SAME—*clause of forfeiture—effect upon right to redeem.* And in such case, although the defeasance,—that is, the agreement to re-convey,—shall make the time of payment of the debt of the essence of the contract, so as to permit, by the terms of the defeasance, a declaration of forfeiture in case payment be not made within the time prescribed, the right to redeem will not be affected thereby. The fact that the transaction was a mortgage being established, it is elementary that the mortgagor can not be deprived of his equity of redemption by any form of contract, however comprehensive and unmistakable its terms showing that such was intended to be its effect.

3. SAME—*devise by mortgagee—what rights will pass.* In a case where a deed absolute in form was in fact only a mortgage, the grantee devised the land described in his deed, to his son, and it was *held*, that the son was not a purchaser for value, but only the recipient of a voluntary gift, and in respect to the property occupied precisely the same position as that of the devisor.

4. SAME—*limitation—bill to redeem, as against a mortgagee in possession.* Where a creditor takes a deed absolute in form as a security for his debt, and enters into possession, receiving the rents and profits, the deed, in equity, being only a mortgage, the same rule of limitation will be alike applicable, in equity as at law, against the mortgagor.

5. SAME—*mortgagee in possession—holding as trustee—laches in seeking an accounting and redemption.* Where a mortgagee takes possession of the mortgaged premises and receives the rents and profits, he will

occupy the position of a trustee in respect thereto, and the mortgagor will be authorized to rely upon his performance of the trust until he does some act unequivocally disavowing it; and the mortgagor can not be guilty of *laches* by merely delaying the bringing of suit for an accounting and for redemption.

6. Acquiescence in a course of conduct inconsistent with the duties of a trustee can not be inferred until the *cestui que trust* has actual knowledge of the breach, for the reason that it is the duty of the trustee to execute the trust, and it is not the duty of the *cestui que trust* to make any inquiry.

7. SAME—*bill to redeem, against mortgagee in possession—basis for the accounting.* On bill against a mortgagee in possession, for redemption, it is proper to take an account of the sum due on the mortgage debt, and of the rents and profits received since the mortgagee has been in possession, after deducting taxes and necessary repairs. The account will not be limited to rents actually received by the mortgagee if it is shown that by reasonable diligence more could have been realized. If the reasonable rents and profits exceed the taxes, insurance and necessary repairs, the surplus at the end of each year should be applied upon the mortgage debt.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kane county; the Hon. ISAAC G. WILSON, Judge, presiding.

This was a bill to redeem from an instrument absolute on its face, but alleged to be a mortgage. The circuit court, on hearing, decreed that the bill be dismissed. That decree was, on appeal to the Appellate Court for the Second District, reversed, and the cause was remanded to the circuit court, with direction to enter a decree in conformity with the opinion then filed. The case is sufficiently presented in the opinion of the Appellate Court by Mr. Justice SMITH, which is as follows:

"This was a bill brought by John Lynch, appellant, against D. B. Jackson and others, appellees, to redeem from a mortgage certain premises described, and for an accounting as to rents and profits.

"The facts, as disclosed by the record, are these: Prior to the 21st day of August, 1877, John Lynch, and S. L. Jackson, the father of D. B. Jackson, had business transactions, result-

ing in Lynch becoming indebted to Jackson upon different promissory notes, some of them secured upon the property now in controversy. These notes had become past due, and were doubled up on one or two occasions, and renewed, and constantly growing, and no part of principal or interest being paid until on August 21, 1877, they reached the sum of $1850, principal and interest. Samuel L. Jackson then notified Lynch that he would wait no longer for his money, and that it must be at once paid, or he would throw him out of the property covered by the mortgage in thirty days. Jackson proposed to Lynch to deed him the property in satisfaction of the debt. Lynch declined to do it, begging further time, which Jackson positively refused to give. Lynch and Jackson spent the whole of the twenty-one days of August trying to adjust the matter. They finally came together, and it was agreed that Lynch and his wife would execute an absolute deed for the premises to Jackson, and that Jackson would obligate himself to re-sell the property to Lynch at the expiration of two years, on condition of Lynch paying up the $1850, with interest. This contract, thus executed, was as follows:

" 'Articles of agreement made this 21st day of August, in the year of our Lord one thousand eight hundred and seventy-seven, between Samuel L. Jackson, of the city of Aurora, Kane county, Illinois, party of the first part, and John Lynch, of the same city, county and State aforesaid, party of the second part:

" '*Witnesseth*, that the said party of the first part hereby covenants and agrees that if the party of the second part shall first make the payments and perform the covenants hereinafter mentioned on his part to be made and performed, the said party of the first part will convey and assure to the party of the second part, in fee simple, clear of all incumbrances whatever hereafter accruing, by a good and sufficient warranty deed, the following lot, piece or parcel of land, viz., situated in the city of Aurora, Kane county and State of Illinois, and described

as follows : Commencing at a point twenty-two feet northerly from the south-easterly corner of lot No. 6, in block 5, of the original plat of West Aurora, as recorded, and running westerly sixty feet at right angles with River street; thence northerly along the east line of lands heretofore belonging to W. V. Plum, twenty-one feet; thence easterly to River street; thence southerly twenty-one feet to the place of beginning,—and being all and the same this day deeded from the said John Lynch and his wife to me, the said Samuel L. Jackson, and being the store and lands on said River street. And the said party of the second part hereby covenants and agrees to pay to said party of the first part the sum of one thousand eight hundred and fifty-two dollars ($1852) two years from the date of these presents, with annual interest at ten per cent per annum, according to the tenor of one certain promissory note executed by said John Lynch, and payable to the said party of the first part two years after date thereof, with annual interest at ten per cent per annum, dated the 21st day of August, 1877, and for the same sum above mentioned, to-wit, the sum of $1852. And in case of the failure of the said party of the second part to make said payments of interest or principal, or perform any of the covenants on his part hereby made and entered into, this contract shall, at the option of said party of the first part, be forfeited and determined, and the party of the second part shall forfeit all the payments by him made on this contract, and such payments may be retained by the party of the first part in satisfaction and liquidation of all damages by him sustained. And it is further mutually covenanted and agreed by and between the said parties, that said party of the first part shall take, keep and retain the possession, occupancy and control of said lands and premises during the continuance of this contract, with a right to rent or lease the same. And it is further mutually agreed, that the said party of the first part shall pay all taxes due, past due and to become due on said premises, and also make all necessary repairs on said lands

and premises, and shall, from the rents received from the same, pay and liquidate such repairs and taxes, and apply any surplus upon the note above described ; and for any surplus of expenses for repairs and taxes over the rent that may be received, the party of the second part shall be liable to the party of the first part as a further indebtedness under this contract, to be paid, with ten per cent interest thereon, at the expiration of the time expressed for the payment of the principal of said note.    And it is also mutually agreed, that the party of the first part may get the premises insured for his own benefit, to the amount not to exceed $1500, during said two years, and the costs and expenses of which shall be a further indebtedness under, and subject to, the terms of this contract.

" 'It is mutually agreed that all the covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors, administrators and assigns of the respective parties.                               S. L. JACKSON, [L. S.]

JOHN LYNCH.    [L. S.]'

"This contract and the deed and notes were all signed and delivered at the same time, and was all one transaction.    It is manifest that the contract was a mere defeasance to the deed, and that the deed, though absolute in form, was intended only as a security for the debt, and was but a mortgage.    The terms of the contract are so clear and conclusive upon that point that no discussion could make it plainer.    The law upon this subject is so well settled that the citation of authorities in its support seems but a useless ceremony, and we shall content ourselves with the citation of a single case,—*Snyder* v. *Griswold*, 37 Ill. 216.    Indeed, we do not understand appellees as making any serious contentions that this was not a mortgage.    They rest their defense upon the ground of *laches* and estoppel.    S. L. Jackson took possession, made repairs, paid the taxes and received the rents.    At the end of two years Lynch failed to pay the note.    Neither he nor S. L. Jackson

gave the matter any attention. Jackson remained in possession until his death, which occurred about one year after the note became due. About a month before his death he made a will, dividing his property up among his children, and gave this property in dispute to his son, D. B. Jackson, who immediately went into possession, and remained in possession, treating the property in all respects as his own until this suit was brought.

"Appellant, Lynch, filed this agreement of defeasance for record immediately after it was made and delivered to him. Taking the property as a gift, and chargeable also with notice of what the recorded contract contained, D. B. Jackson holds the property precisely as his father held it, and can claim no exemptions or rights in relation to the property which his father could not have claimed. This contract notified him that he was holding and improving the property and collecting rents as a mortgagee, whose duty it was to apply all above repairs and taxes on appellant's note. He went into possession under this mortgage, and remained in possession with full legal knowledge of the obligations to apply all in excess of taxes, interest and repairs, on this note. He can not claim that he was innocently and ignorantly making these improvements, and that appellant was standing by and permitting him to improve his property without informing him of his rights. Appellant contracted in this defeasance that his note might be paid by the rents unless Jackson elected to declare a forfeiture on failure to pay the note. There is no proof that such a forfeiture was ever declared. It is a maxim of the law, that 'once a mortgage is always a mortgage until it is satisfied.' *Miller* v. *Thomas*, 14 Ill. 428.

"If this property had once passed into the hands of a stranger, for a valuable consideration, without actual or constructive notice of this defeasance, then very different questions would arise. But here the constructive notice to appellees, of the rights of appellant, is clear, and the strong probabilities are

that he had actual notice of the nature of the transaction between his father and appellant. But constructive notice is as effectual to protect appellant's right as actual notice. Appellee's position, then, as well as that of his father before him, was simply that of a mortgagee in possession,—nothing more, nothing less,—the father with actual contract knowledge of that fact, and the son, being but a volunteer, took it chargeable with its burthens in his father's hands, with the added constructive knowledge the record gave him,—that the only rights he had in the property were those of a mortgagee, and that under the defeasance he might declare a forfeiture and foreclose the mortgage, or he might waive the forfeiture and continue in possession, under the terms of the defeasance, until the note, with its accruing interest, was paid with the surplus rents over taxes and repairs, and then surrender back the premises to appellant. This, in our judgment, was the clear legal effect of that defeasance.

"Finding, as we do, that this was a mortgage, the only remaining question for us to determine is, has anything intervened to prevent appellant having the right to redeem. The appellees urge that he has lost this right by his delay in bringing his bill, and by estoppel. In this State no definite rule was ever laid down as a limitation of time upon the right of mortgagors to redeem from mortgagees in possession, until the case of *Locke* v. *Caldwell*, 91 Ill. 417, came before the Supreme Court, in 1879. Prior to that time the cases involving that question seemed to be determined, not so much upon any statute of limitations, as upon the circumstances and equities surrounding each particular case.

"In the case above referred to, of *Locke* v. *Caldwell*, the court holds that the law of limitations as to the right of a mortgagee to foreclose, and that of a mortgagor to redeem, are mutual. The question there arose as to the right of a mortgagor to redeem a certain town lot, and also certain other lands, upon a bill filed for that purpose. The court uses this language:

'It is the well settled general rule, that twenty years' possession by the mortgagee without account or acknowledgment of any subsisting mortgage, is a bar to the equity of redemption, unless the mortgagor can bring himself within the provisions of the Statute of Limitations. (*Demarest* v. *Wynkoop,* 3 Johns. Ch. 129.) In *Harris* v. *Mills*, 28 Ill. 44, this court has held, that when the note secured by the mortgage was barred after sixteen years, the mortgagee would also be barred. The general rule which has been stated as to twenty years' possession by the mortgagee barring the equity of redemption, is reciprocal, and the mortgagee be equally barred by the lapse of time.'

"In this case the court quotes with approval the language of Chancellor KENT in *Moore* v. *Cable*, 1 Johns. Ch. 386, where he declares the rule to be, that twenty years' actual possession by the mortgagee is necessary to bar the equity of redemption in the mortgagor. And the same doctrine was held in *Bollinger* v. *Choteau*, 20 Mo. 89. There a bill to redeem was filed thirty-six years after the mortgage was made, and sixteen years had elapsed after the mortgagee had taken possession. 'In general, the respective rights of the mortgagee and mortgagor, with regard to *foreclosure* on the one hand and *redemption* on the other, are treated as mutual—that is, the existence of the former is held to involve that of the latter, and *vice versa;* and the fact that the one can not be legally enforced, under the circumstances, is regarded as sufficient to preclude a claim for the other. It is said the right to redeem and foreclose are reciprocal and commensurable. 2 Hilliard on Mort. sec. 2.' And in this same case the court refused to apply the doctrine of *statenus* and *laches,* which was there urged, as it is urged here, under the rule laid down in 2 Story's Eq. Jur. sec. 1520, as being a defense peculiar to courts of equity, and founded upon mere lapse of time and the staleness of the claim, in cases where no statute of limitations directly governs the case.

"We understand the above case of *Locke* v. *Caldwell,* from which we have quoted, as holding that the right of redemption is not barred by a less time than the right of foreclosure,— which, under the statute in force when the note in question here was made, would be ten years. This bill was filed in a little over five years after the note was due.

"Counsel for appellees cite us to a great number of cases where equitable relief has been denied on the ground of *laches,* and to many cases where the right to redeem has been refused for the same reason. It is said that *Bush* v. *Sherman,* 80 Ill. 160, is an authority against appellant. In that case the mortgagor executed a trust deed, with a power of sale, and then voluntarily went into the great rebellion, and joined himself to the enemies of his country, and while absent the premises were sold under the power. When he returned, after the war, he filed a bill to set aside the sale, alleging that the power was not executed in strict conformity with the deed of trust. There was no question of the right of redemption involved. The court held that his delay was inexcusable for the purpose of setting aside a sale for mere irregularity.

"In *Cleaver* v. *Green,* 107 Ill. 68, it was held that five years' lapse of time would bar a right to set aside a sale made under a trust deed, with a power of sale, for mere irregularities in the sale. No question of the right of redemption was made, further than that such right would result from setting aside the sale.

"In *Beach* v. *Dyer,* 93 Ill. 295, the bill was to declare a trust and enforce specific performance, and complainant's *laches* was held a bar.

"In *Williams* v. *Rhodes,* 81 Ill. 572, the bill was to set aside an execution sale after the lapse of five years, and the relief was denied on account of the lapse of time.

"In *Maher* v. *Farwell,* 97 Ill. 56, the bill was filed, as in the case at bar, to redeem from an alleged mortgage, in the shape of a deed absolute on its face. The bill set up a parol agreement, made about the time of the conveyance between Maher

and Farwell, to the effect that a deed absolute should be made to Farwell, and that upon the payment of a note of $1700, which Farwell held against Maher, the land should be conveyed back to Maher. The bill to redeem was filed some thirteen years after the date of the deed and the alleged parol agreement, and the relief was denied. The court, in that case, seems to place the chief ground for refusing the relief prayed for, on the failure of Maher to prove his bill by clear and satisfactory evidence after so great a lapse of time. It is true, the court says that Maher had shown no sufficient reason for the long and extraordinary delay in bringing his suit, and until the facts connected with the transaction had faded from the memory of the witnesses, or the witnesses died or left the country. So far as can be gathered from this case, the attention of the court had not been called to its previous deliberate judgment in *Locke* v. *Caldwell*, 91 Ill. 417. The remark as to the lapse of thirteen years seems to be incidental to the main point of the decision holding that the parol defeasance was not sufficiently proven, and that it was dangerous to place too much weight on the memory of witnesses after the lapse of so many years. These observations of the court could have no application where the defeasance was in writing and under seal, and where there could be no question about the fact of the defeasance being made, as in the case before us. That and this case, in that important respect, are wholly different.

"But aside from the grounds upon which we have so far considered the case, and found that appellant has the right to redeem, we are not disposed to hold that appellant would not have the right to redeem from the mere lapse of time. It is evident, from the record, that his financial condition made it difficult, if not impossible, for him to raise so large a sum of money, and that for him to have made application to redeem without the money to do so would have been an idle ceremony. He might well rest on the presumption that his debt was being paid by the rents, and that it was much better for him to let

it remain in that condition until the debt was paid, than for him to repossess himself of it, and again begin the struggle to pay the debt himself, which he had so successfully failed to do before he executed the mortgage and let the mortgagee into possession. We think the delay was not so great or unreasonable, under the circumstances, as to justify a court of equity in now withholding the right to redeem on the mere ground of *laches,* even if there were no better ground upon which to place the right to redeem.

"For the reasons above given, we think the court erred in dismissing complainant's bill. The decree will be reversed, and the cause remanded, with directions to the court to set aside the order dismissing the bill, and to grant a decree allowing complainant to redeem, and to refer the case to the master to state an account of the amount due on the note, and also of the rents and profits received by the appellees, together with taxes and insurance paid, and the reasonable and necessary repairs made, and at the end of each year to credit the note with the surplus, if any, of rents over taxes, insurance and necessary repairs, etc., or for each succeeding year. If there is any balance found due complainant he will be entitled to a decree for that amount, and if there be any balance found due appellant he will be entitled to a decree against the party having had possession of the property, for such balance."

Mr. CHARLES WHEATON, and Mr. M. O. SOUTHWORTH, for the plaintiffs in error:

On the question and doctrine of *laches,* see *Lloyd* v. *Lee,* 45 Ill. 277; *Brooks* v. *Record,* 47 id. 30; *Kane County* v. *Herrington,* 50 id. 232; *Cochran* v. *Harrow,* 22 id. 345; *Walsh* v. *Brennan,* 52 id. 193; *Donaldson* v. *Holmes,* 23 id. 85; *Anderson* v. *Frye,* 18 id. 94; *Dempster* v. *West,* 69 id. 613; *Brink* v. *Steadman,* 70 id. 241; *Munn* v. *Burges,* id. 604; *Hamilton* v. *Lubukee,* 51 id. 415; *Williams* v. *Rhodes,* 81 id. 572; *Beach* v. *Dyer,* 93 id. 295; *Maher* v. *Farwell,* 97 id. 56.

As to whether the deed and contract constituted a mortgage, or sale and contract for re-sale, see 1 Jones on Mortgages, sec. 267; *Rue* v. *Dole,* 107 Ill. 275; *Pitts* v. *Cable,* 44 id. 103; *Hanford* v. *Blessing,* 80 id. 188.

Mr. R. G. MONTONY, and Mr. A. C. LITTLE, for the defendant in error:

As to whether the deed constituted a mortgage, see *Glass* v. *Doane,* 15 Bradw. 66; *Sutphen* v. *Cushman,* 35 Ill. 186; 4 Kent's Com. 136; 1 Washburn on Real Prop. 505; *Snyder* v. *Griswold,* 37 Ill. 216; *Taintor* v. *Keyes,* 43 id. 332; 1 Jones on Mortgages, secs. 267, 241-245, 250.

As to the Statute of Limitations and *laches,* see 2 Daniell's Ch. Pl. and Pr. 729, 732, 735; 2 Story's Eq. Jur. sec. 1520; *Smith* v. *Clay,* Ambler, 645; *Bond* v. *Hopkins,* 1 S. & L. 429; *Ryder* v. *Emrich,* 104 Ill. 470.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

We have given careful consideration to the questions discussed upon this record, and we find no reason to disagree with the conclusions reached by the Appellate Court. We hold:

*First*—This transaction was a mortgage, and not an absolute sale and re-sale. It differs from the cases cited and relied upon by counsel for plaintiffs in error in these material respects: The original indebtedness is not extinguished, but it is put in the form of a promissory note, payable two years after date, with interest at the rate of ten per cent per annum. This note Jackson may sue upon and collect at any time after maturity, notwithstanding anything that appears in the contract between them. Jackson is required to account for rents and profits, and, after payment for repairs and taxes, to apply the amount due on account thereof in liquidation of the note. He has no discretion in this respect, and should the amount ultimately equal or exceed the amount due upon the note, he would

be compelled at once to reconvey to Lynch, thus occupying the relation to Lynch of a mortgagee in possession.

*Second*—The plaintiff in error D. B. Jackson is not a purchaser for value. He is the mere recipient of a voluntary gift, —a devisee for no other consideration than that of natural love and affection,—and as respects this property, therefore, he occupies precisely the same position as would the devisor, were he, instead of the devisee, the party to this suit.

*Third*—The doctrine of *laches* has no application to a case like the present. As between these parties, this is a mortgage, in nowise different from any other mortgage; and the same rule of limitation is alike applicable, in such case, in equity as at law. (2 Story's Eq. sec. 1520.) The plaintiff in error D. B. Jackson, as mortgagee in possession, exercises a trust, and the defendant in error was authorized to rely upon his performance of the trust until he did some act unequivocally disavowing it. And the defendant in error, therefore, can not be guilty of *laches*, under the facts here in evidence, by merely delaying the bringing of suit, for acquiescence in a course of conduct inconsistent with the duties of a trustee, as is well said in Perry on Trusts, (2d ed.) sec. 850, can not "be inferred until the *cestui que trust* has actual knowledge of the breach, for the reason that it is the duty of the trustee to execute the trust, and it is not the duty of the *cestui que trust* to make any inquiry." See, also, 1 Pomeroy's Eq., concluding part of sec. 418, and authorities cited in note 1, on page 460.

*Fourth*—We do not think the cross-error well assigned. We understand the direction to be, in substance, that an account be taken of the amount due Jackson on his loan, and of the rents and profits which have been received since the mortgagee has been in possession, after deducting taxes and necessary repairs. There is nothing in the direction which recognizes that the account shall not include rents received by Samuel L. Jackson, or that will limit it to rents actually received, if it shall be shown that by reasonable diligence more could have

been realized, as held in *Mosier* v. *Norton*, 83 Ill. 524, as counsel seem to suppose.

The judgment is affirmed.        *Judgment affirmed.*

Subsequently, on the 7th day of October, 1889, upon an application for rehearing, the following additional opinion was filed:

SCHOLFIELD, J. : A petition has been presented to us, praying for a rehearing upon this point, contended for by plaintiffs in error in their original argument, and of which no notice is taken in the foregoing opinion, namely : Conceding that the relations between Jackson and Lynch were those of mortgagor and mortgagee, yet inasmuch as they expressly agreed, in the instrument witnessing the continuance of that relation, that in the case of the failure of Lynch to make payments at the time therein stipulated, Jackson was authorized to declare the right of Lynch to redeem forfeited, and Jackson did declare such forfeiture by devising the property to plaintiff in error D. B. Jackson, a court of equity can not relieve Lynch from the consequences of such declaration of forfeiture. Authorities were cited in the argument, and are repeated in the petition, to the effect that where the parties to a contract for the conveyance of real estate make time of the essence of the contract, a failure to perform at the time will absolutely preclude the party so failing, from having a performance of the contract,— that in such case such parties' rights are forfeited and incapable of being enforced, in equity as well as at law.

The point was not noticed in the opinion, because it was not supposed it was intended to be contended that this doctrine is applicable to the case, save upon the hypothesis that it was found that the transaction was an absolute conveyance and a contract of re-sale. That, if such had been found to be the fact, the doctrine contended for would have been applicable, there can be no question. But it was found that the transaction was not an absolute conveyance and a contract of re-sale,

but a mortgage of the property; and the fact of mortgage being established, it was assumed that it is elementary that the mortgagor can not be deprived of his equity of redemption by any form of contract, however comprehensive and unmistakable its terms showing that such was intended to be its effect. A court of chancery, when it ascertains that the object of a transaction is to give security for a debt, "will always relieve the mortgagor from the consequences of his failure to perform the condition." 2 Jones on Mortgages, (2d ed.) sec. 1039; Bispham's Eq. secs. 153, 154; 3 Pomeroy's Eq. secs. 1193, 1219.

It is said in Jones on Mortgages, *ubi supra:* "The right of redemption is the creature of the law. It is not in terms expressed by the parties in the mortgage. But whatever be the form of the transaction, if intended as a security for money it is a mortgage, and the right of redemption attaches to it. Although a deed contain a condition that it shall be absolute and without redemption if a certain sum be not paid by the grantor at a fixed time, and the condition is not punctually performed, there is a right of redemption."

It is said in note 1 to section 1193 of 3 Pomeroy's Eq.: "This doctrine is based upon the relative situation of the debtor and the creditor. It recognizes the fact that the creditor necessarily has a power over his debtor which may be exercised inequitably,—that the debtor is liable to yield to the exertion of such power; and it protects the debtor absolutely from the consequences of his inferiority, and of his own acts done through infirmity of will. The doctrine is universal in its application, and underlies many special rules of equity. It extends to stipulations limiting the time of redemption, or the parties who may redeem. Notwithstanding all such stipulations, the time to redeem is general." See the numerous cases there cited.

The prayer of the petition must be denied.

*Rehearing denied.*