[No. 8589.]

## MARSHALL V. RUSSELL.

1. DEED ABSOLUTE FOR SECURITY—*Contemporaneous Agreement as to Effect of Default.* No effect will be accorded to a stipulation in a mortgage, or a deed intended as a mortgage, that in case of default the mortgagee shall become the absolute owner of the land. (420.)

A complicated series of conveyances and re-conveyances, held to be without effect as to a prior mortgage, by a former proprietor. (418, 420.)

2. CONTRACTS—*Construction—Conduct of Party,* is admissible to show his understanding that a deed absolute was in fact intended as a mortgage. (420, 422.)

*Error to Weld District Court.* Hon. NEIL F. GRAHAM, Judge.

Mr. SAMUEL E. MARSHALL, for plaintiff in error.

Mr. EDWARD J. BOUGHTON and Mr. W. C. DANKS, for defendant in error.

Mr. Justice HILL delivered the opinion of the court.

Action by the defendant in error upon a promissory note for $1500 and interest, bearing date June 1, 1911, executed by one Hurlbert, secured by mortgage deed upon real estate, recorded June 6, 1911. The complaint prays for foreclosure, etc., and that the defendant Marshall be barred from claiming any right to the land except the right to redeem. The decree was for the plaintiff. Marshall only brings the case here for review.

The record discloses that at the time this note and mortgage were given there was a prior deed of trust upon the real estate in controversy, given by Mr. Hurlbert's grantor, to secure $3,000 with interest; also that prior to the execution of the note and mortgage sued upon, Mr. Hurlbert had deposited with The International Trust Company warranty deeds for this and other lands to one John Smith, together with some personal security, accompanied by a writing signed by him and Smith in which it was pro-

vided that if, before October 16, 1910, he, Hurlbert, should pay The Trust Company for Smith the sum of $7,000 with interest, then owing by Hurlbert to Smith, and do certain other things, that the Trust Company was to cancel the deed to the land in question, and surrender it to Hurlbert, and that in the event he did not make such payments or perform the other conditions, etc., the Trust Company was directed to deliver the deed to Smith. It was further agreed that upon the delivery of the deed and other papers to Smith, that the land should become the property of Smith, and should be accepted by him in full payment and satisfaction of the indebtedness due Smith from Hurlbert. It was also stated in the agreement that in such event the deeds should not be considered as mortgages for the indebtedness for which they were placed in escrow to secure, but that their delivery to Smith should cancel the indebtedness from Hurlbert to Smith. It was also stated in the agreement that in the event Hurlbert should make the payments provided therein, etc., that Smith would execute and deliver to him quit-claim deeds for the lands, etc. This instrument was dated October 29, 1909, and recorded November 4, 1909. Preceding the execution of this instrument, Mr. Hurlbert was owing Mr. Smith something like $20,000, secured by mortgage on a ranch in Saguache County, a part of this had become due, and it was agreed between them that Mr. Smith would release his lien upon the Saguache County ranch, and Mr. Hurlbert would secure a loan secured thereon for $12,000 and pay that amount to Mr. Smith, which he did, and secure the balance, something like $7,000, by depositing with The Trust Company certain deeds and other papers, under the escrow agreement above mentioned. It is conceded that the defendant in error, Russell, had actual, as well as constructive, notice of this transaction when he took his mortgage, but that the time for this payment had expired, and the deeds had not yet been recorded. The record

further discloses that by agreement between Hurlbert and Smith, dated October 22, 1910, the time for payment fixed by this escrow agreement was extended to April 16, 1911, and The Trust Company notified accordingly. This extension agreement was never recorded. Thereafter, in September, 1911, the deeds from Hurlbert to Smith were, by The Trust Company, delivered to Smith, and recorded September the 12th, same year. The public trustee of Weld county sold the property under the first deed of trust, February 5, 1912, and issued a certificate of purchase therefor. November 4, 1912, Hurlbert redeemed from this trustee's sale, and upon the same date Smith reconveyed the property to him by warranty deed, which was recorded November 6, 1912. December 20, 1912, Hurlbert quitclaimed the land in question to the plaintiff in error, Marshall, at which time it was agreed between them that this quit-claim deed was to be treated as a mortgage to secure the payment of certain notes issued by The American Fuel Company, of which he, Hurlbert, was a director.

The plaintiff in error contends that when the deed from Hurlbert to Smith was placed of record, the existence of which Russell had notice of, that this conveyed absolute title to the property to Smith, and thereby defeated any claim which Russell had under his mortgage; that the reconveyance from Smith to Hurlbert did not re-invest any title in Hurlbert to the property, sufficient to inure to the benefit of Russell, for the reason that in taking this reconveyance and redeeming the property from the trustee's sale, that he, Hurlbert, was a mere conduit for the transfer of the title to The American Fuel Company, who furnished Hurlbert the money with which to secure its redemption and conveyance, under an agreement that it was to be conveyed to The Fuel Company, who, in turn, contemplated mortgaging it to the plaintiff in error, and that the deed from Hurlbert to Marshall, given to secure this indebtedness, ac-

complished the same result. A part of this contention might be answered by the statement that the evidence fails to establish some of these facts, but, as we view it, we need not go into this phase of the contention, for in our opinion, when considered as a whole, the testimony clearly sustains the holding of the trial court that the deeds from Hurlbert to Smith deposited with the escrow agreement were intended, at the time they were executed, as mortgages only, or security for the debt. *Hawkins v. Elston,* 58 Colo. 400, 146 Pac. 254; Jones on Mortgages, Vol. 2, (5th ed.), §§ 1039-1040; Vol. 27 Cyc. 994; *Jackson v. Lynch,* 129 Ill. 72, 21 N. E. 580, 22 N. E. 246; *Tennery v. Nicholson,* 87 Ill. 464; *Malone v. Roy,* 134 Calif. 344, 66 Pac. 313; *Live Stock Co. v. Trading Co.,* 87 Kans. 221, 123 Pac. 733, L. R. A. 1915B. 492; *Batty v. Snook,* 5 Mich. 231.

The fact that the escrow agreement states that in the event of non-payment, etc., the instruments shall become absolute, does not change the rule. It is a familiar and undisputed proposition that no force will be given to a stipulation in a mortgage, or in a deed intended as a mortgage, or in any instrument executed at the same time accompanying such deed, by which the mortgagor agrees that if he fails to make payment by a stated time the mortgagee shall become the absolute owner of the property. Vol. 12 Cyc. 1098; Vol. 11 Am. & Eng. Encyc. of Law, 243.

The deed when executed, being simply a mortgage for the security of a debt, could not thereafter become anything else except through the execution of a subsequent agreement, based upon a valuable consideration. Such was not done, for which reason the cases cited by the plaintiff in error are not applicable; but to the contrary not only were these instruments when executed, given as security for this debt, but they were thus treated by the parties to them, not only at the time of their execution and delivery, but thereafter. The testimony of Mr. Smith is convincing of these facts

wherein he gives his reasons as to why he reconveyed to Mr. Hurlbert, after he had received and recorded the deeds and at a time when, according to the version of the plaintiff in error, he, Smith, was the absolute owner of the property, but as stated, his testimony is convincing that he did not so understand it, and when coupled with his actions in reconveying to Hurlbert upon the payment of the amount which was due him from Hurlbert, is conclusive of the fact that at all times he considered that the deeds were given as security for his debt, and nothing more; for which reason, when he reconveyed upon the payment of the amount due him, he was simply allowing Mr. Hurlbert to redeem or satisfy the indebtedness, for which the instruments were given to secure.

The fact that Mr. Hurlbert secured money from The American Fuel Company with which to redeem from the first deed of trust does not change the condition of the title, which it is conceded was absolute in him after such redemption, except for the instruments delivered to Smith, when, as stated, he redeemed from them by securing a reconveyance of the property from Smith to him, at which time Russell's mortgage became the first lien upon the property. The fact that he agreed to sell the land to The American Fuel Company did not change these facts, and the fact that he afterwards executed a quit-claim deed to the plaintiff in error, to secure the payment to them of certain indebtedness of The American Fuel Company, likewise could not change these conditions, and the fact that Mr. Hurlbert, who made no defense, and did not testify in the case, gave to Mr. Marshall a quit-claim deed for the land, without any guaranty of title, rather than a warranty, as security for the indebtedness of his fuel company, if evidence of anything concerning title, would be an inference to the effect that he considered the Russell mortgage a prior lien thereon, rather than that it had been wiped out by the delivery of

the Smith deeds by The Trust Company to Smith; but regardless of what anyone may have thought, the facts remain that when Hurlbert executed the Russell mortgage he was the owner of the property, subject to the first mortgage, and the lien to Smith; that these liens were thereafter satisfied by Hurlbert, and the property reconveyed to him. This was prior to the execution of the quit-claim by Hurlbert to Smith, at which time the Russell mortgage was a first lien thereon, and the trial court was correct in thus holding.

The judgment is affirmed.

*Affirmed.*

Chief Justice GABBERT and Mr. Justice TELLER concur.