## OTIS A. TURNER

### *v.*

## EATON LITTLEFIELD *et al.*

*Filed at Springfield November 2, 1892.*

1. MORTGAGES AND DEEDS OF TRUST — *qualification of party to purchase under.* A party, to secure the repayment of a sum of money in five years, took a deed of land, which was to become absolute if not paid in five years, and which was subject to a prior and first lien of a deed of trust. Before the maturity of his debt the debtor informed him of his inability to pay, and abandoned all claim to the land. The party holding such deed then procured the trustee to make a sale of the land under the power of sale, and became the purchaser, and obtained a deed: *Held,* that after such abandonment the creditor did not sustain such a relation to the debtor as to preclude him from becoming a purchaser under the trust deed, and that a judgment creditor of the debtor could not redeem from the deed taken as a mortgage, and subject the land to the payment of his judgment.

2. SAME — *sale under, to subsequent mortgagee.* A sale and conveyance of land under a trust deed, in accordance with its terms, executed and recorded in 1877, to a party not disqualified from purchasing, which trust deed was the prior lien on the land, will pass the title to the purchaser, although he may have had a mortgage on the land growing out of a transaction subsequent to the execution and recording of the deed of trust.

3. EVIDENCE — *of abandonment of claim — quit-claim deed.* After a party has abandoned his claim of the right to have a conveyance of property for inability to make payment therefor. a quit-claim deed from him, although no title may pass thereby, is admissible to corroborate other evidence that he has abandoned all claim to the property.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Adams county; the Hon. WILLIAM MARSH, Judge, presiding.

Mr. WILLIAM McFADON, for the appellant:

The case of *Smith* v. *Doyle,* 46 Ill. 454, is a case so near the same as this as that it should govern the present one.

By statute, in Illinois, every deed conveying real estate, intended as security, in the nature of a mortgage, though in

form of an absolute conveyance, is to be considered as a mortgage. 2 Starr & Curtis, p. 1636, chap. 95, sec. 12.

This rule applies to a sheriff's deed as well as any other. *Smith* v. *Doyle*, 46 Ill. 454; *Reigard* v. *McNeil*, 38 id. 400; *Sweetzer's Appeal*, 71 Pa. St. 264; 1 Jones on Mortgages, 241.

The same rule has been applied in Illinois to purchasers at a public land sale by the government, by a party who has agreed with another in such a way as to make the deed which such purchaser has taken, in equity, a security for money, and hence a mortgage. *Davis* v. *Hopkins*, 15 Ill. 524; *Smith* v. *Sackett*, 15 id. 530.

A very common form of the application of the rule announced in the statute above cited, is where one person has attended a foreclosure or other public sale, and purchased property under an agreement to hold it until the purchase money is repaid by the party at whose instance such purchaser has gone to such public sale, the deed taken by the purchaser in such an action being held to be a mere mortgage. 1 Jones on Mortgages, sec. 241, and cases cited; *Reigard* v. *McNeil*, 38 Ill. 400; *Sweetzer's Appeal*, 71 Pa. St. 264; *Ryan* v. *Dox*, 34 N. Y. 307; *Klock* v. *Walter*, 70 Ill. 417.

The agreement dated September 18, 1879, being made prior to the sheriff's deed, such agreement, by proper construction, made such sheriff's deed a mortgage, and not a mere agreement on the part of Littlefield and Collins to convey the property by said sheriff's deed conveyed to them. *Smith* v. *Calley*, 1 Allen, 108; *Baker* v. *Fireman*, 79 Cal. 38; *Flagg* v. *Mann*, 2 Sum. 406; *Miller* v. *Thomas*, 14 Ill. 428.

The sheriff's deed of date December 2, 1879, being, though absolute in form, a mere mortgage, to secure to Littlefield and Collins the payment of moneys, the rule, once a mortgage always a mortgage, attaches, and the Rutherfords had an equity of redemption which existed until foreclosure, and could only be cut off by a foreclosure of said deed as a mortgage, which foreclosure was never made. *Jackson* v. *Lynch*,

129 Ill. 84; *Tenney* v. *Nicholson*, 87 id. 464; *Willetts* v. *Burgess*, 34 id. 498; 2 Jones on Mortgages, sec. 1039.

This right of redemption was never lost to the Rutherfords, under the evidence in this case, as against the lien of the said Gatchell judgment. *Bearss* v. *Ford*, 108 Ill. 16; 1 Jones on Mortgages, secs. 250, 251; *Ennor* v. *Thompson*, 46 Ill. 215; *Bailey* v. *Bailey*, 5 Mass. 505.

The agreement of September 18, 1879, contained a declaration to the effect that Littlefield and Collins held the property conveyed by said sheriff's deed of December, 1879, in trust for the Rutherfords. (*Tyler* v. *Tyler*, 25 Ill. App. 339.) And, consequently, it was not in the power of said Littlefield to cause, as he did do, the property so held in trust by him for the Rutherfords, to be exposed to sale under the Castle deed of trust, of date August 1, 1877, and set up the title thus acquired by him at the sale under said deed of trust as against the Rutherfords, and not being able to set the same up adversely to the said Rutherfords, he can not set up the same adversely to a creditor of Rutherfords levying upon the land embraced in the sheriff's deed of December 2, 1879. *Clark* v. *Laughlin*, 62 Ill. 278; *O'Halloran* v. *Fitzgerald*, 71 id. 53; *King* v. *Cushman*, 41 id. 38.

Mr. J. F. Carrott, for the appellees:

The transaction was a conditional sale, subject to the right of Rutherford and wife to have a reconveyance of the property to them, upon the payment, within five years from the date of the sheriff's deed, of the amount mentioned in the agreement. 1 Jones on Mortgages, secs. 261, 264, 265, 267-270, 272, 331; 2 Devlin on Deeds, secs. 1119-1125; *Ranstead* v. *Otis*, 52 Ill. 30; *Carr* v. *Rising*, 62 id. 14; *Magnusson* v. *Johnson*, 73 id. 156; *Hanford* v. *Blessing*, 80 id. 188; *Knowles* v. *Knowles*, 86 id. 8; *Hancock* v. *Harper*, 86 id. 445; *Caprez* v. *Trover*, 96 id. 456; *Rue* v. *Dole*, 107 id. 275; *Freer* v. *Lake*, 115 id. 662; *Eames* v. *Hardin*, 111 id. 634.

Neither the Rutherfords nor the complainant in this case can in any way question the regularity, validity or legal effect of the trustee's sale made by Castle to Littleffeld on September 23, 1882. The long acquiescence by the Rutherfords in the sale amounts to an equitable bar. *Munn* v. *Burges*, 70 Ill. 604; *Gibbons* v. *Hoag*, 95 id. 45.

The following delays in seeking relief have been held a bar: Seven years: *Dempster* v. *West*, 69 Ill. 613; *Munn* v. *Burges*, 70 id. 604; *Breit* v. *Yeaton*, 101 id. 242; *McDonald* v. *Stow*, 109 id. 40.

Six and a half years' delay: *Campan* v. *Van Dyke*, 15 Mich. 371.

Five years' delay: *Medsker* v. *Swancy*, 45 Mo. 273; *Williams* v. *Rhodes*, 81 Ill. 571; *Cleaver* v. *Green*, 107 id. 67.

Four years' delay, even if the rights of third persons have not intervened: *Hamilton* v. *Lubukee*, 51 Ill. 420; *McHany* v. *Schenk*, 88 id. 357; *Hoyt* v. *Pawtucket Inst.* 110 id. 390.

Three years and eight months' delay: *Jones* v. *Smith*, 33 Miss. 215.

Three years' delay: *Jennison* v. *Hapgood*, 7 Pick. 1.
One year's delay: *Scott* v. *Freeland*, 7 S. & M. 409.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by Otis A. Turner, against Eaton Littlefield and others, in which the complainant seeks to have a certain deed made by the sheriff of Adams county to Littlefield and William H. Collins, executed December 2, 1879, purporting to convey certain lands, and a certain agreement executed by the Rutherfords and Littlefield and Collins, declared a mortgage, with right of redemption as a judgment creditor, and the right to a sale of the lands in satisfaction of his judgment after the payment of the amount of advances made by Littlefield under the deed and agreement.

The record in this case is somewhat voluminous, but as to the main facts upon which the decision of the case rests there

is no substantial controversy. On the 13th day of April, 1878, William Marsh obtained a judgment in the circuit court of Adams county, against Reuben C. and Rebecca M. Rutherford, for $5750, upon which an execution issued April 30, 1878, directed to the sheriff of Adams county. The sheriff of Adams county levied on the following lands in said county, the property of Rebecca M. Rutherford, viz: The south-west quarter of the north-east quarter of section 31, and the south half of the north-west quarter of section 31, fifty-six acres off the north end of the east half of the south-west quarter of section 31, the east half of the south-west quarter of section 34, and the south-west quarter of the north-east quarter of section 34, all in township 1, south, range 8, west, and also the south half of the north-west quarter of section 6, township 2, south, range 8, west, except a part of the last named tract set off for homestead; and on June 1, 1878, at a sale on said execution, all of said real estate was sold to William Marsh, the part set off for homestead alone excepted.

On May 30, 1879, Robert McComb obtained a judgment in the Adams county circuit court against the Rutherfords, for $715.04. Execution issued on this judgment August 22, 1879. McComb redeemed said premises from the sale under the Marsh judgment by paying to the sheriff the proper amount of redemption money, and the McComb execution was levied on the premises, the part set off for homestead excepted, and on September 18, 1879, a sale under the levy on the McComb execution was made at the court house by the sheriff of Adams county. The lands in section 31, aforesaid, were sold, and a certificate of purchase therefor was given to Eaton Littlefield and William H. Collins. The balance of the lands was sold to other parties. On December 2, 1879, the time of redemption having expired, and no further redemption having been made, the sheriff executed a deed to Littlefield and Collins for the lands they bid off in section 31.

It also appears that an agreement was executed by Little-field, Collins and the two Rutherfords, bearing date September 18, 1879, which recites that Marsh had obtained the judgment heretofore mentioned and a sale of the lands on execution issued thereon. The agreement then recites that Robert Mc-Comb had also obtained a judgment, as heretofore stated. The agreement then proceeds as follows:

"And whereas, the said Robert McComb, as a judgment creditor, has redeemed the above and foregoing described property (excepting the property lying in section thirty-four (34) as above described) by paying the said Marsh the full amount of his claim thereon; and whereas, Eaton Littlefield and William H. Collins furnished the money for the payment of a portion of the said Marsh's claim, namely about four thousand dollars ($4000) to said McComb:

"Therefore it is understood and agreed that the said Little-field and Collins are to take a sheriff's deed of the following described property, (when sold to satisfy the aforesaid judgment of the said Robert McComb,) to-wit, the south-west quarter of the north-east quarter of section thirty-one (31), in township one (1), south of the base line and range eight (8), west of the fourth principal meridian; also, the south half of the north-west quarter of said section thirty-one (31); also, fifty-six (56) acres off the north end of the east half of the south-west quarter of said section thirty-one (31), subject to prior encumbrances; such deed to be treated as a mortgage, and said property to be held in trust for the benefit of said Reuben C. and Rebecca M. Rutherford, and their heirs or legal representatives, and as a security to the said Eaton Lit-tlefield and William H. Collins for the repayment to them of the said sum of four thousand dollars ($4000), with the interest thereon annually.

"And it is further understood and agreed, that if, at any time within five years from the date of said sheriff's deed to the said Eaton Littlefield and William H. Collins, the said

Reuben C. and Rebecca M. Rutherford, or either of them, or their heirs, executors, administrators or assigns, shall repay the said sum of four thousand dollars ($4000), with interest thereon at the rate of eight per cent per annum from the 22d day of August, A. D. 1879, together with all money advanced or loaned to said Rebecca M. and Reuben C. Rutherford by said Eaton Littlefield and William H. Collins or either of them; also all money advanced or paid by said Littlefield and Collins, or either of them, on the principal or interest that has already accrued or may accrue on any prior liens or encumbrances on said land, or for taxes, or for any necessary repairs, or for maintaining or keeping in repair the fences on said land, with interest at the rate of eight per cent per annum, to the said Eaton Littlefield and William H. Collins, or their legal representatives, then the said Littlefield and Collins shall, and they do hereby agree, for themselves, their heirs and executors, administrators or assigns, to reconvey the last above described real estate, situate in section thirty-one (31), township one (1), to the said Reuben C. and Rebecca M. Rutherford, or either of them, or their legal representatives.

"And it is still further understood and agreed between the said Eaton Littlefield and William H. Collins, and the said Reuben C. and Rebecca M. Rutherford, and all parties concerned, that in case the said Reuben C. and Rebecca M. Rutherford, or either of them, or their legal representatives, creditors or assigns, shall fail to repay the said sum of four thousand dollars ($4000), with interest thereon, and other sums or moneys as above mentioned, to the said Eaton Littlefield, William H. Collins or their legal representatives, within the term of five years, as above specified, then the said sheriff's deed to said Eaton Littlefield and William H. Collins is to be considered and held by them as a deed absolute for them and their heirs forever.

"In witness whereof, we have hereunto set our hands and seals this 18th day of September, A. D. 1879, at Quincy, Ill."

It also appears that at the time of the recovery of the Marsh judgment, and of the execution of the agreement dated September 18, 1879, said land in section 31 was subject to the lien of a deed of trust dated August 1, 1877, to George Castle, trustee, and was duly recorded in the recorder's office of Adams county, Illinois; that on the 14th day of September, 1882, William H. Collins and wife, by their quit-claim deed of that date, conveyed all their right, title and interest in said land to said Littlefield; that on the 23d of September, 1882, George Castle, as trustee, after duly advertising said trustee's sale, in pursuance of the power in said trust deed contained, sold said land to said Littlefield for the sum of $11,850, amount bid by him at said trustee's sale and made and delivered to said Littlefield his trustee's deed of that date, made and executed in pursuance of the power in said deed of trust contained, and that said trustee's deed was duly recorded in the recorder's office of said Adams county on the 28th day of September, 1882. It also appears that on December 14, 1883, Alfred Gatchell recovered a judgment against the Rutherfords for $3144. Execution was issued on the judgment during the year next following its rendition. On the 18th day of August, 1889, the judgment was assigned to Otis A. Turner, the complainant, and on the 19th day of August following, an execution was issued and levied on the lands in section 31, heretofore described. On the same day the complainant filed this bill in aid of the execution. It also appears that on the 30th day of October, 1884, Reuben C. and Rebecca M. Rutherford, by quit-claim deed of that date, conveyed said premises to Littlefield.

It is insisted by the complainant that the sheriff's deed to Littlefield and Collins, dated December 2, 1879, and the agreement dated September 18, 1879, which showed the terms and conditions upon which the lands were redeemed under the McComb judgment, constitute a mortgage, while on the other hand, it is claimed that the deed is an absolute conveyance, and the agreement was a mere contract providing for a recon-

veyance to the Rutherfords, if, within five years, they should repay the $4000 and interest, and the other sums mentioned in the agreement, which they failed to do.

Much of the argument is devoted to a discussion of the question whether the transaction was a mortgage or an agreement for a re-sale, and many authorities have been cited by counsel which are claimed to sustain their respective positions on this branch of the case. We shall not, however, stop to review the authorities or determine that question, as, in our judgment, the decision of the case does not hinge upon that question.

As has been seen, at the time Littlefield and Collins purchased the property at sheriff's sale the lands were encumbered by a deed of trust executed and recorded in 1877. Under this prior lien the property was sold, and purchased by Littlefield on the 23d day of September, 1882,—long before the complainant's judgment was rendered. As the deed of trust under which this sale was made was the first lien on the property, it is plain if the sale was made in conformity to the terms and conditions of the deed of trust, and Littlefield had the right to purchase the property at the sale, then he acquired the title, regardless of the prior sale by the sheriff; and the contract executed in pursuance of such sale, under which the Rutherfords had the right to redeem or repurchase within a specified time. It is a fact beyond dispute that the sale was made in conformity to the terms of the deed of trust. No unfairness is charged or claimed from any quarter. The debt secured by the deed of trust was a valid obligation, and the deed of trust executed to secure it was the first lien on the property. But while it is conceded that the sale was in all respects regular and in conformity to the terms of the deed of trust, and that Littlefield purchased at the sale and obtained a deed, yet it is insisted that Littlefield occupied such relations to the Rutherfords in regard to the property that he was precluded from becoming the purchaser at the trustee's sale.

After Littlefield and Collins purchased at the sheriff's sale they paid all taxes on the property, from year to year, until Collins sold out to Littlefield, and from that time until the present he has paid all taxes. After the sheriff's sale the possession of the property passed into the hands of Littlefield, who testified that at the sheriff's sale he notified Rutherford that the latter had no right to any further rents,—"that the land was ours. He acknowledged it, and said he could not live unless we allowed him to have the rents." Littlefield and Collins finally consented that Rutherford might have the rents for a time, and he received the rents for the years 1880, 1881 and 1882. In 1879 Littlefield paid the interest on the Castle trust deed, and continued to pay it until the sale, in 1882. In 1882 Littlefield became dissatisfied with the situation of the property, and called upon Rutherford to determine whether he would repay the advances which had been made, and take the property or abandon it, and he testified, and in this he is not contradicted, that Rutherford acknowledged his inability to take the property, and he then abandoned and gave it up. This was a short time before the sale under the deed of trust. His testimony, as shown in the abstract, on this point, was as follows: "As I said, I did not know whether I was out of the house or not. I met Dr. Rutherford, and told the doctor in June, 1882, that we had waited nearly three years, and I wanted to know whether he was going to buy the property,— that we had paid out all the money. Redeeming was never mentioned between us at any time. I never had any conversation until about that time about his buying. I stated that the property, instead of increasing, was decreasing in value. I stated the amount that it had cost and what it cost to pay the Castle trust deed, and I wanted to know whether he could raise the money and buy the property, or whether he intended to do it. I also stated the amount due when we had the conversation, that he was owing. The amount that it would take to purchase the property in section 31 and pay his debts was

over $40,000. He stated that he could not pay them; that he must give up all hope, and did give up all hope; that he must turn his attention to try and save his home place, to save a portion of it. That was the conversation at the time."

It is true that the Rutherfords had the right, if they saw proper, to insist upon it, under the contract of September 18, 1879, to repurchase, at any time within five years from the date of that contract, by repaying all advances, but if they discovered their inability to perform the contract at any time before the expiration of the five years, no reason is perceived why they might not abandon the contract and surrender all rights under it, and if this was done, then, after such abandonment, it seems clear Littlefield would have the same right to purchase under the trustee's sale that a stranger to the transaction would have. If Littlefield had purchased at the trustee's sale without first calling upon the Rutherfords to determine whether they intended to repay the moneys he had advanced, and rely upon the contract under which he procured title at the sheriff's sale, there might be ground for holding that he was not in a position to purchase and acquire an outstanding title which he could set up as against them. But this he did not do. He had never assumed the Castle deed of trust, and was under no obligation to pay it, but, for the purpose of protecting the title he had acquired at the sheriff's sale, he voluntarily paid the interest on the deed of trust from 1879 to 1882, paying out in interest over $2000. As the property was not advancing in value, he then became apprehensive that the property was not of sufficient value to repay his advances and at the same time pay the deed of trust, which, of course, had to be paid, or all the advances made by him would be lost. In this condition of things he called on the Rutherfords and requested them to determine what course they would pursue,—whether they would raise the money and pay the advances on the property, or abandon it. They not being able to raise the money necessary to pay the advances, elected

to abandon the property, and so notified Littlefield. Under such circumstances, he had the undoubted right, for the purpose of protecting himself, to purchase at the trustee's sale. After the Rutherfords notified him that'they were unable to perform the contract, and'abandoned whatever claim or right they had under it, there was no longer any equitable relation existing between him and.them which would forbid him from purchasing the property at the trustee's sale and relying upon such title, not only as against them but their creditors.

The fact that the Rutherfords had abandoned all claims to the property under the contract before the sale under the deed of trust, does not rest entirely on the evidence heretofore alluded to. After the sale, in 1882, Littlefield assumed the entire control of the property. No rents were paid to the Rutherfords after that year, nor did they exercise, or assume to exercise, any control or management of the property, and in October, 1884, they executed and delivered to Littlefield a quit-claim deed of the property. It is not claimed or pretended that any title passed by this last mentioned deed, but the execution and delivery of the deed is a fact proper for consideration in corroboration of the testimony of the defendant that the Rutherfords had abandoned all claim to the property before the sale under the trust deed.

In the argument much stress is placed on the fact that Littlefield requested the trustee to make the sale under the deed of trust. We do not think this fact affects the validity of the sale. For four years Littlefield had' paid the interest on the deed of trust and all taxes on the land. The original sum advanced by him at the sheriff's sale remained unpaid, and owing to the embarrassed financial condition of the Rutherfords there was no prospect of recovering anything from them. Under such circumstances, after the Rutherfords had declared their inability to repurchase or redeem the property, we think Littlefield had the undoubted right to call upon the trustee to sell. Indeed, if Littlefield had declined to pay the interest on

41—142 Ill.

the trust deed, and he was under no obligation to pay it, a sale of the property would have been the result whether he had requested it or not. Littlefield made no effort to conceal the fact that the property would be sold under the deed of trust. The sale was a public one, and attended by the Rutherfords and so far as appears there was nothing in the conduct of Littlefield, in connection with the sale, liable to censure.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*