## HENRY B. EASTMAN

*v.*

## EATON LITTLEFIELD *et al.*

*Filed at Springfield November 23, 1896.*

1. DEEDS—*quit-claim deed conveys grantor's title only.* The grantee in a quit-claim deed takes no better title than his grantor held at the time such deed was executed.

2. SALES—*irregular sale under trust deed is merely voidable.* Where the relations sustained to a grantor in a trust deed by one who purchases the land at a sale thereunder are such that he is not a proper purchaser, the sale, while irregular, is merely voidable, and may be ratified by such grantor.

3. LACHES—*when delay will bar right to redeem.* A grantor in a trust deed who stands by and allows his land to be sold thereunder to a subsequent mortgagee and who surrenders to the purchaser possession of the land, is precluded, after a delay of five years, in the absence of fraud, from redeeming the land for alleged irregularity in the sale.

WRIT OF ERROR to the Circuit Court of Adams county; the Hon. OSCAR P. BONNEY, Judge, presiding.

This was a bill in equity brought by Henry B. Eastman, against Eaton Littlefield and others, to redeem the following described lands, under which the defendant Littlefield claimed title, from certain sales, viz.: The south-west quarter of the north-east quarter of section 31, township 1, south, range 8, west; the north-west quarter of section 31, township 1, south, range 8, west; fifty-six acres off the north end of the east half of the south-west quarter of section 31, township 1, south, range 8, west; the south half of the north-west quarter of section 6, township 2, south, range 8, west, in Adams county. The complainant filed his bill on the 12th day of May, 1890, in which he claimed to have purchased the lands under a quit-claim deed from Reuben C. Rutherford and Rebecca M. Rutherford, his wife. The quit-claim deed in question bore date April 25, 1890.

It appears from the record that for some six years prior to 1879 Rebecca M. and Reuben C. Rutherford owned the lands in sections 6 and 31, described in the bill, subject to certain incumbrances and liens upon the lands. At the March term of the circuit court of Adams county, 1878, William Marsh obtained a judgment against the Rutherfords for $5750, upon which an execution issued April 30, 1878, directed to the sheriff of Adams county. This execution was levied on the lands in sections 6 and 31, and after setting off to the Rutherfords a homestead in section 6, 123 feet wide and 554 feet long, including the dwelling house, the lands were sold in separate parcels to Marsh in satisfaction of his judgment. On May 30, 1879, Robert McComb obtained a judgment against the Rutherfords for $715.04, upon which an execution was issued. August 22, 1879, McComb, as judgment creditor, redeemed the premises from the sale under the Marsh judgment, and the McComb execution was levied on the premises redeemed. On September 18, 1879, a sale was made, and Eaton Littlefield and William H. Collins became the purchasers of the lands in section 31, and the lands in section 6 were sold to Browning and Singleton, who had assisted in raising a part of the money to redeem from the sale of the lands under the Marsh judgment. Upon the expiration of the time allowed for redemption, the sheriff, on December 2, 1879, conveyed the lands in section 31 to Littlefield and Collins and the lands in section 6 to Browning and Singleton. It appears that an agreement was executed by Littlefield and Collins and the two Rutherfords, of date September 18, 1879, in which it is recited that Marsh had obtained the judgment heretofore mentioned and that the lands had been sold on execution issued thereon. The agreement then states that Robert McComb had also obtained a judgment against the Rutherfords, and then proceeds as follows:

"And whereas, Eaton Littlefield and William H. Collins furnished the money for the payment of a portion

of the said Marsh's claim, namely, about $4000, to said McComb, therefore it is understood and agreed that the said Littlefield and Collins are to take a sheriff's deed of the following described property, when sold to satisfy the aforesaid judgment of the said Robert McComb, to-wit: The south-west quarter of the north-east quarter of section 31, in township 1, south of the base line, and range 8, west of the fourth principal meridian; also the south half of the north-west quarter of said section 31; also fifty-six acres off the north end of the east half of the south-west quarter of said section 31, subject to prior encumbrances, such deed to be treated as a mortgage and said property to be held in trust for the benefit of said Reuben C. and Rebecca M. Rutherford and their heirs or legal representatives, and as a security to the said Eaton Littlefield and William H. Collins for the repayment to them of the said sum of $4000, with the interest thereon annually. And it is further understood and agreed, that if, at any time within five years from the date of the said sheriff's deed to the said Eaton Littlefield and William H. Collins, the said Reuben C. and Rebecca M. Rutherford, or either of them, or their heirs, executors, administrators or assigns, shall repay the said sum of $4000, with interest thereon at the rate of eight per cent per annum from the 22d day of August, A. D. 1879, together with all money advanced or loaned to said Rebecca M. and Reuben C. Rutherford by said Eaton Littlefield and William H. Collins, or either of them, also all money advanced or paid by said Littlefield and Collins, or either of them, on the principal or interest that has already accrued or may accrue on any prior liens or encumbrances on said land, or for taxes, or for any necessary repairs, or for maintaining or keeping in repair the fences on said land, with interest at the rate of eight per cent per annum, to the said Eaton Littlefield and William H. Collins, or their legal representatives, then the said Littlefield and Collins shall,

and they do hereby agree for themselves, their heirs and executors, administrators or assigns, to reconvey the last above described real estate, situate in section 31, township 1, to the said Reuben C. and Rebecca M. Rutherford, or either of them, or their legal representatives. And it is still further understood and agreed between the said Eaton Littlefield and William H. Collins and the said Reuben C. and Rebecca M. Rutherford, and all parties concerned, that in case the said Reuben C. and Rebecca M. Rutherford, or either of them, or their legal representatives, creditors or assigns, shall fail to repay the said sum of $4000, with interest thereon, and other sums or moneys, as above mentioned, to the said Eaton Littlefield, William H. Collins, or their legal representatives, within the term of five years as above specified, then the said sheriff's deed to said Eaton Littlefield and William H. Collins is to be considered and held by them as a deed absolute for them and their heirs forever.

"In witness whereof, we have hereunto set our hands and seals this 18th day of September, A. D. 1879, at Quincy, Illinois."

It also appears that at the time of the recovery of said Marsh judgment and of the execution of said agreement dated September 18, 1879, said land in section 31 was subject to the lien of a deed of trust dated August 1, 1877, to George Castle, trustee, for $11,000, and was duly recorded in the recorder's office of Adams county, Illinois; that on the 14th day of September, 1882, said William H. Collins and wife, by their quit-claim deed of that date, conveyed all their right, title and interest in said land to said Littlefield for the sum of $3295; that on September 23, 1882, said George Castle, as trustee, after duly advertising said trustee's sale, in pursuance of the power in said trust deed contained, sold said land in section 31 to said Littlefield for the sum of $11,850, as bid by him at said sale, and made and delivered to said Littlefield his trustee's deed of that date, which was duly recorded in

the recorder's office of said Adams county on September 28, 1882; that on October 30, 1884, said Rutherford and wife executed a quit-claim deed of said land in section 31 to said Littlefield, which was duly recorded; that Littlefield paid from July, 1880, to May, 1892, interest coupon notes secured by said Castle trust deed to the amount of $1719.15.

Turning now to the defendant's title to the land in section 6, it appears the land in section 6 was subject to two deeds of trust,—one to Orville H. Browning and the other to Eaton Littlefield,—each for the sum of $6000, and both dated February 23, 1878, and made by said Rebecca M. Rutherford and her husband to James F. Carrott, trustee, and duly recorded; that on January 20, 1885, said Carrott, as trustee, after duly advertising said trustee's sale in pursuance of the power in said trust deed contained, sold the land in section 6 to said Littlefield for the sum of $6900, as bid by him at said trustee's sale, and made and delivered to said Littlefield his trustee's deed of that date, which was duly recorded in the recorder's office of said Adams county on the 26th day of January, 1885; that on April 22, 1885, Littlefield purchased the $6000 note held by said Browning, and secured by one of the deeds of trust to Carrott, trustee, and paid $8240 therefor; that on April 27, 1885, said Rutherford and wife executed a quit-claim deed of said land in section 6 to said Littlefield.

It is charged in the bill that at the times Littlefield obtained title to the lands in sections 6 and 31 he was, in fact and in law, the trustee of said lands for Rebecca Rutherford, and as such he was incapacitated from acquiring any title in the lands adversely to her. The defendant Littlefield in his answer denies that he holds the land as the trustee of the complainant, and avers that even if he ever acquired or held said land in section 31 in trust for said Rutherfords, said trust relation ceased to exist between said parties during the summer of 1882,

and that the said Rutherfords allowed said agreement in writing of date September 18, 1879, to become forfeited, and wholly abandoned said premises in the summer of 1882. It is also set up in the answer that defendant acted in good faith in advancing his own money to purchase said land in section 6 at said sheriff's sale under said Ralston judgment and execution, and at said trustee's sale made by Carrott, trustee, on January 20, 1885, and also said land in section 31 at said sheriff's sale under said McComb judgment and execution, and at said trustee's sale made by Castle, trustee, on September 23, 1882, and in making repairs and valuable improvements on said lands, and in paying the taxes on said lands ever since and including the year 1880. It is also set up that the alleged rights of the complainant are stale and antiquated, and that he is guilty of *laches* and is barred by lapse of time ; that even if said agreement of September 18, 1879, together with said sheriff's deed therein referred to, constituted a loan and was to be treated as a mortgage, as alleged in the bill, said Rebecca and her husband having surrendered, in the summer of 1882, possession of said land in section 31 to Littlefield, and having surrendered the possession of said land in section 6 to Littlefield more than seven years before the filing of the bill herein, and Littlefield having paid all taxes assessed against said land in section 6 since 1880, it would be unjust and inequitable for the Rutherfords, or any one claiming under them, to be permitted to redeem said lands, and that in equity every such person is estopped and barred from claiming the relief prayed for in the bill.

E. A. SHERBOURNE, and GOVERT & PAPE, for plaintiff in error:

Where the junior incumbrancer holds the equity of redemption in trust for others, he stands in the same position as any other trustee, and cannot prejudice the rights of his beneficiaries by purchasing at the prior mortgage

164—9

sale. 26 Am. & Eng. Ency. of Law, 932, and cases cited; *Parkinson* v. *Hanbury*, 2 DeG., J. & S. 450; *Boyd* v. *Hawkins*, 2 Ired. Eq. 304; *Taylor* v. *Heggil*, 83 N. C. 244; *Van Epps* v. *Van Epps*, 9 Paige, 237; *Bell* v. *Webb*, 2 Gill, 163.

The equity of redemption, not being extinguished by such a purchase, would pass by the deed of the owners to their grantee. The rights of the mortgagee to foreclose and of the mortgagor to redeem are mutual, and the same law of limitations applies to both remedies, and where the right to foreclose is not barred by the statute neither will the right to redeem be barred by the statute, nor will it be lost by *laches* or mere staleness of the claim. *Jackson* v. *Lynch*, 129 Ill. 72; *Locke* v. *Caldwell*, 91 id. 417.

J. F. CARROTT, for defendants in error.

Mr. JUSTICE CRAIG delivered the opinion of the court:

The plaintiff in error, Henry B. Eastman, in consideration of $1000, on April 25, 1890, obtained a quit-claim deed from Rebecca M. and Reuben C. Rutherford for the premises described in the bill. The deed passed no better or greater title than belonged to the grantors at the time the deed was executed. If they had no title none was transferred by the deed. Moreover, as Littlefield was, at the time the deed was executed, in possession of the premises, Eastman purchased with full notice of all the rights and title of Littlefield. The question here, then, between plaintiff in error, Eastman, and defendant in error Littlefield, is one of title, the former claiming through the Rutherfords under the quit-claim deed of April 25, 1890, and the latter claiming under judgment and mortgage sales and under deeds, wherein the title of the Rutherfords passed to him long before the execution of the deed to plaintiff in error. As the title relied upon by Littlefield is not the same in both tracts of land it will be necessary to consider the title in section 31 separately from the title in section 6.

It will be observed that the lands in both sections were sold on a judgment in favor of Marsh on June 1, 1878. After the expiration of twelve months, one McComb, having obtained a judgment against the Rutherfords, redeemed as a judgment creditor from the Marsh sale, and the lands were again sold on September 18, 1879, and the lands in section 31 purchased by Littlefield and Collins, and on December 2, 1879, they obtained a sheriff's deed for the lands.   Prior to this sale and on the 18th of September, 1879, the Rutherfords and Littlefield and Collins executed an agreement in writing, set out in the foregoing statement.   It will also be seen by a reference to the statement, that at the time the Marsh judgment was recovered and at the time the agreement was executed, September 18, 1879, the lands in section 31 were subject to a prior lien,—a deed of trust dated August 1, 1877, given by the Rutherfords to George Castle, for $11,000. It also appears that under and by virtue of the trust deed, upon due notice being given, Castle sold the premises in section 31, and at the sale Littlefield became the purchaser for the sum of $11,850, and obtained a deed for the premises.   In *Turner* v. *Littlefield*, 142 Ill. 630, the validity of this deed was called in question by a bill in behalf of Turner, a judgment creditor of the Rutherfords, to redeem, and after a full consideration we held that Littlefield acquired title under that sale and deed.   The facts in this record bearing on the question are substantially the same as were the facts in the *Turner case.*   The Rutherfords have testified on one point in this case where they did not testify in the *Turner case*, but in view of all the facts presented by the record we do not regard the evidence of the Rutherfords as producing such a change in facts as to authorize us to change the conclusion reached in the *Turner case* as to the validity of the purchase of Littlefield under the Castle trust deed.   We therefore adhere to the conclusion reached in the *Turner*

*case,* and refer to the opinion in that case for an expression of our views on the question raised.

We now come to the other tract of land, which is a part of section 6. As has been seen, Rebecca M. Rutherford and her husband, on February 23, 1878, executed two deeds of trust on the land,—one to O. H. Browning and one to Eaton Littlefield, for $6000 each. James F. Carrott was made trustee. Both trust deeds bore the same date, but it was recited in the one given to Littlefield that Browning's deed of trust was a prior lien. On the 12th day of January, 1885, the trustee sold the premises at public auction under the Littlefield deed of trust after giving notice as required by its terms, and the premises were purchased by Littlefield for $6900. Upon making the sale the trustee executed and delivered to Littlefield a deed for the premises. In the following April Littlefield purchased the deed of trust held by Browning on the premises, paying therefor $8240. This sale, so far as appears, was in all respects regular and made in strict conformity to the deed of trust. Other parties bid at the sale, but the premises were finally struck off to Littlefield, he being the highest bidder. No reason is perceived why the title did not pass to Littlefield under this sale. The validity of the sale is further evidenced by a written lease executed by Littlefield and the Rutherfords on February 4, 1885, which recites that in consideration of one dollar Littlefield rented to the Rutherfords twelve acres, being part of the eighty acres in section 6, from the date of the lease till April 15, 1885, with the privilege to the second party to purchase the same for $10,000 in cash, and that unless so purchased the premises to be surrendered to Littlefield on April 15, 1885, and containing a recital that "said party of the second part hereby declares that they have already surrendered all of said south half of said quarter section, except above described tract of land, except about twelve acres, to the said party of the first part, he being the owner of the same and legally

and equitably entitled to the same, and the same having been long held by us as tenants of said Littlefield."

After the purchase by Littlefield, and after the execution of this lease fully recognizing the title of Littlefield, the Rutherfords took another step in confirmation of Littlefield's title. At the request of Poling, who was about to loan money to Littlefield and take security on the land, the Rutherfords, on April 27, 1885, executed à quit-claim deed to Littlefield, conveying all their interest in the land to him. It is difficult to understand why this was done if the Rutherfords still owned the land. If they were the owners, as is now claimed, it is more reasonable to suppose that when they found that Littlefield was about to mortgage the lands they owned to secure a debt he was contracting, they would have protested against the action of Littlefield, and instead of furnishing him with facilities to mortgage the land they would have entered a protest.

But independently of these considerations, if the relations of Littlefield and the Rutherfords were of such a character that he could not properly purchase the lands in section 31 at the sale under the Castle trust deed and the lands in section 6 under the trust deed given to him to secure $6000, these sales were not void, but voidable merely. If the sales were irregular or defective the Rutherfords had the right to institute proceedings in apt time to set aside the sales, or they could ratify and confirm them. If guilty of *laches* their *laches* will be a bar to relief. In *Hamilton* v. *Lubukee*, 51 Ill. 415, it was held that a mortgagor should avail himself in apt time of irregularities in the sale of the premises by the mortgagee under a power in the mortgage. A delay of four years after the mortgagor had knowledge of the sale and proceedings under it was held to preclude him from maintaining a bill to redeem. In *Dempster* v. *West*, 69 Ill. 613, it was held that after a delay of seven years from the sale of land under a power in a mortgage the mortgagor will be cut off from

avoiding the sale for irregularities, in the absence of fraud or an equitable excuse for the delay. In *Bush* v. *Sherman*, 80 Ill. 160, it was held that acquiescence, unexplained, for any considerable time, in a sale which is voidable but not void, will be deemed a waiver of all irregularities that may have intervened. In *Sloan* v. *Graham*, 85 Ill. 26, where a bill was filed to set aside an administrator's sale on the ground the administrator purchased at his own sale, it is said (p. 29): "There is evidence in the record tending to prove that John Sloan purchased for his son, and in our opinion it is sufficient to establish the fact that the administrator purchased at his own sale. But while we are satisfied, from the evidence, that John Sloan purchased for his son, who was at the time administrator, yet that fact did not render the sale void, but voidable only, and if proceedings should not be instituted in apt time by the heirs of Richard Graham, deceased, who alone had the right to contest the sale, a ratification by them would be presumed." In *Hoyt* v. *Pawtucket Institution for Savings*, 110 Ill. 390, it was held that a delay of four years in filing a bill by the former owner to set aside a sale of real estate under a deed of trust was such *laches* as would bar the relief sought. See, also, *Irish* v. *Antioch College*, 126 Ill. 474, and *Cornell* v. *Newkirk*, 144 id. 241.

Here the bill was filed May 12, 1890. The evidence shows that the trustee's sale of the land in section 31 was made by Castle, trustee, to Littlefield, on September 23, 1882,—more than seven and one-half years before the bill was filed. During this time he was in possession of the land, leasing it and using it as his own, and paying taxes from year to year as owner. As to the tract in section 6, the evidence discloses that the trustee's sale was made by J. F. Carrott, trustee, to Littlefield, on January 20, 1885,—five years and three months before the bill was filed. In February after the sale the Rutherfords leased twelve acres of the land, which included the house, and declared in the lease that Littlefield was the

absolute owner.   They occupied as tenants until March, 1886, when they moved to Quincy, and remained there until November, 1887, when they removed to New York. The Rutherfords knew how Littlefield had acquired title to the lands.   Indeed, Rutherford himself was present at the trustee's sales, and if they desired to contest the sales they were required to proceed in apt time.   This they failed to do, and under the authorities they are barred by their *laches.*

*Jackson* v. *Lynch,* 129 Ill. 72, has been cited as an authority by plaintiff in error.   We do not think the decision in that case has any bearing on the facts in this.

The judgment of the circuit court was, in our opinion, correct, and it will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE CARTER, having been of counsel for one of the parties in the court below, took no part in the decision of the case.