296

Edward C. Steinhauer, Administrator with Will An-
nexed of Estate of James A. Beeby, Deceased and
Luella Jane Beeby, Appellees, v. Christine J. Bots-
ford et al.
Appeal of Christine J. Botsford, Appellant.

Gen. No. 43,272.

Heard in the second division of this court for the first district at the December term, 1944. Opinion filed December 18, 1945. Rehearing denied January 2, 1946. Released for publication January 2, 1946.

LOUIS I. SHAPIRO, of Chicago, for appellant.

JAMES J. MEJDA and FRANCIS E. LUTHMERS, both of Chicago, for appellees.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

On July 30, 1941 Edward C. Steinhauer, as administrator with the will annexed of the estate of James A. Beeby, deceased, filed a complaint for an ''Accounting and Reconveyance'' against Christine J. Botsford. George R. Hillstrom, individually and as trustee, was also named as a defendant but no relief was sought against him and he filed no appearance or answer. Christine J. Botsford will hereinafter for convenience be referred to as the defendant. Thereafter Luella Jane Beeby was made an additional party plaintiff and an amended complaint was filed which asked for an accounting and the reconveyance of the real estate

involved herein, which had been conveyed by James A. Beeby to Christine J. Botsford by a quitclaim deed on June 29, 1933 and also asked that the court declare that said quitclaim or absolute deed was given merely as additional security for a first mortgage indebtedness. The cause was referred to a master and in conformity with the findings and recommendations contained in his report a decree was entered in favor of plaintiffs, wherein the trial court found *inter alia* that said quitclaim deed from James A. Beeby to Christine J. Botsford, although absolute on its face, was given as additional security for a first mortgage indebtedness which was owned and held by said Christine J. Botsford and ordered that "the defendant, Christine J. Botsford, account for the rents, issues and profits from said premises, and expenditures made upon said premises, from May 1, 1933, and that the plaintiffs be permitted to redeem said property if such accounting shows any balance due to the defendant, Christine J. Botsford, and if there is no balance found to be due to Christine J. Botsford, then the said Christine J. Botsford shall reconvey, and is hereby ordered to reconvey said premises to the plaintiffs and pay said plaintiffs such amount as may be found to be due from said accounting." The decree also ordered a rereference to the master "to take an account" between the parties. Defendant, Christine J. Botsford, appeals from the decree.

The amended complaint alleged substantially that James A. Beeby had been the owner of the real estate located at 10240 South State street, Chicago, Illinois, which on June 29, 1933 was subject to a first mortgage indebtedness of $2,000 secured by a trust deed; that the defendant, Christine J. Botsford, was the owner and holder of the principal note representing this indebtedness; that said real estate was also subject to a second mortgage indebtedness which had been reduced to $134.60; that on June 29, 1933, Beeby conveyed the

property in question to defendant by a quitclaim deed; that "said deed of conveyance, although appearing to be absolute on its face, was not intended to be such by said James A. Beeby and said Christine J. Botsford, but on the contrary the said parties then and there *orally agreed* that the same would be additional security for the mortgage indebtedness . . . held and owned by said Christine J. Botsford and owed by said James A. Beeby; that it was then and there mutually understood and agreed as part of said oral agreement that the deed and the premises thereby conveyed were to be held by the said Christine J. Botsford simply and only as additional security for the payment of said sum of money and interest due under said mortgage aforesaid and not as an absolute conveyance; that said Christine J. Botsford would collect and account for the rents, issues and profits of said premises and after applying the same to the reasonable expenses of the maintenance of said property, would then apply the balance of said rents, issues and profits in payment of said mortgage indebtedness; and that upon the payment and satisfaction of said mortgage obligation and the interest thereon in the manner and sum aforesaid or by the prior satisfaction thereby by said James A. Beeby that said Christine J. Botsford would thereupon reconvey said premises to said James A. Beeby by an absolute deed, free and clear of said mortgage indebtedness"; that on or about June 29, 1933 defendant entered into the possession of the premises and thereafter collected and retained the rents and profits thereof which were sufficient to satisfy her mortgage obligation; that defendant failed and refused to account to Beeby during his lifetime or to plaintiffs for said rents and profits and has refused to reconvey said premises "in accordance with the agreement hereinabove set forth"; and that "by reason of the aforesaid, plaintiffs are now entitled to a reconveyance of said premises and to an accounting incident thereto."

The amended complaint further alleged that James A. Beeby died on April 20, 1934 leaving a will, dated May 3, 1932, in which he devised and bequeathed all of his real and personal estate to his daughter, Luella Jane Beeby; that said will was filed in the office of the clerk of the probate court but that George R. Hillstrom who was named executor therein neglected and refused to probate same or otherwise administer Beeby's estate; that the property involved herein is registered under the Torrens system and on April 30, 1934 plaintiff, Luella Jane Beeby, filed an affidavit in the Office of the Registrar of Titles of Cook county claiming an interest in said property; that defendant is still the owner and holder of the principal note representing the $2,000 first mortgage indebtedness and that she has paid the second mortgage indebtedness out of the rents received from the property; that by reason of the failure of Hillstrom to probate Beeby's estate plaintiff, Edward C. Steinhauer, was appointed as administrator with the will annexed of said estate on May 8, 1941 and qualified as such; and that plaintiffs through their attorneys have repeatedly requested from defendant an accounting of the rents and profits of the aforesaid premises but that she has refused to comply with such requests.

Defendant's answer denied all the material allegations of the amended complaint bearing on plaintiffs' right to a reconveyance of the real estate and to an accounting for any rents and profits received by her from same and averred that James A. Beeby conveyed the property to her for a valuable consideration and not as additional security for the first mortgage indebtedness owned and held by her at the time of said conveyance.

Defendant first contends that "the gist of the amended complaint is that Beeby, the grantor, and Botsford, the grantee, *orally agreed* that the quitclaim deed was to be considered merely as additional secu-

rity for the mortgage indebtedness"; and that "no evidence was introduced to support such alleged oral agreement."

Plaintiffs' answer to this contention is that "the gist of the amended complaint is that the quitclaim deed was intended as additional security for the mortgage indebtedness" and that "the evidence introduced supported such contention"; that "the complaint alleges the ultimate fact that the deed was intended as additional security, and the evidence supported this allegation"; and that "the court properly found in its decree that the allegations in the amended complaint were true as therein stated as the evidence supported such findings."

■ ■ The only ground or theory alleged in the amended complaint upon which plaintiffs predicated their right to the relief sought was that when Beeby executed and delivered the quitclaim deed to defendant on June 29, 1933, he and defendant "then and there *orally agreed* that the same would be additional security for the mortgage indebtedness . . . held and owned by said Christine J. Botsford and owed by said James A. Beeby." The complaint then went on to allege the details of the oral agreement and repeatedly referred to same. It is asserted in plaintiffs' brief that the above quoted allegation avers "the ultimate fact that the deed was intended as additional security, and the evidence supported this allegation." In our opinion this is not a correct statement of the substance and meaning of this averment. The ultimate fact set forth therein was that the parties "*orally agreed*" that the quitclaim deed would be additional security for the mortgage indebtedness and the proof required to support this allegation was that Beeby and defendant did enter into an oral agreement that manifested their intention that the quitclaim deed was given merely as additional security for the mortgage indebtedness. Not only is there no evidence in the record to show that

Beeby and the defendant entered into the alleged oral agreement but plaintiffs made no attempt to prove any such agreement. Inasmuch as the only cause of action alleged in plaintiffs' amended complaint was that when Beeby executed and delivered the quitclaim deed to defendant, he at the same time "orally agreed" with her that said deed would be merely additional security for the mortgage indebtedness and since plaintiffs made no attempt to prove this cause of action, the trial court, instead of finding in its decree that "the allegations of the amended complaint are true as therein stated," should have sustained defendant's exceptions to the master's report and found that plaintiffs had failed to prove the aforesaid oral agreement and dismissed their amended complaint for want of equity. Citation of authorities is not necessary in support of the well established rule that a party to a suit, either at law or equity, cannot have relief under proofs without allegations, nor under allegations without proof in support thereof. (*Leitch v. Sanitary Dist. of Chicago*, 386 Ill. 433.) It is elemental that where a plaintiff fails to prove the cause of action made by his complaint he is not entitled to recover, although the facts actually proved would have entitled him to relief had his bill been framed upon a different theory. (*Oetting v. Graham*, 373 Ill. 247.) The rule that proofs without corresponding allegations are in equity as unavailing as allegations without proofs is familiar to every lawyer. (*Angelo v. Angelo*, 146 Ill. 629.)

Even though it be assumed that plaintiffs might properly present evidence extraneous from the alleged oral agreement under the averments of the amended complaint to show that when Beeby delivered the quitclaim deed to defendant the parties intended that such deed was merely given as additional security for the mortgage indebtedness, was the evidence introduced by them sufficient to establish such intention?

It is legally presumed that an absolute conveyance of real estate is what it purports on its face to be and the burden of proof rests upon the party asserting that a deed absolute is in fact a mortgage or additional security for a mortgage indebtedness and was so intended by the parties and such proof must be clear, satisfactory and convincing.

It appears that the real estate in question was improved with a five-room frame cottage on a concrete foundation; that Beeby was a widower and lived therein with his daughter, Luella Jane Beeby, until about the middle of May 1933; that at that time he and his daughter moved to the home of defendant under an arrangement whereby he was to pay the latter $30 per month for his own room and board and $15 per month for his daughter's ; that Luella Jane Beeby lived at defendant's home about a month, when she left to take a position doing housework; that Beeby continued to live at defendant's home about three months longer; that he had no income except a pension which he received from his former employer; that prior to moving into defendant's home he was in debt for coal and had numerous liens against his property for both general taxes and special assessments; and that before he executed the quitclaim deed to defendant on June 29, 1933 he was in default as to principal and interest on both the first and second mortgages.

We will now consider the only evidence presented by plaintiffs that could possibly be considered material to the question as to whether Beeby and defendant intended the quitclaim deed to be given merely as additional security for the first mortgage indebtedness.

Luella Jane Beeby testified that "she [Mrs. Botsford] said it was best for us to go to her place; that the rent was to apply on the mortgage, to get the mortgage off''; and that defendant made this statement to her on the day she moved into defendant's home about the

middle of May and that her father was not present at the time. Defendant denied that she told Luella Jane Beeby that ''the rent was to apply on the mortgage, to get the mortgage off.'' Defendant admitted in her testimony that, when Beeby delivered the quitclaim deed to her she retained in her possession the principal mortgage note, the trust deed and the extension agreement, instead of cancelling same and turning them over to him. Plaintiffs also introduced evidence by which they attempted to show that the consideration received by Beeby for his quitclaim deed was grossly inadequate.

It certainly cannot be held that the flimsy, uncorroborated testimony of Luella Jane Beeby that Mrs. Botsford told her that ''the rent was to apply on the mortgage'' constituted the clear, satisfactory and convincing proof required to show that a deed absolute was intended to be merely additional security for a mortgage indebtedness.

It is true that under the particular circumstances of some cases there is a presumption that ''where the grantor is indebted to the grantee at the time of the conveyance and the note evidencing such indebtedness is retained by the grantee, such indebtedness was not satisfied by the conveyance, and, until the contrary is shown, the presumption is that the instrument, though a deed absolute on its face, is a mortgage.'' *Wallace v. Greenman,* 321 Ill. 423, 430. However, a different situation arises where, as here, the defendant testified positively that her note and mortgage were paid by the quitclaim deed and that she thereafter paid all general taxes levied against the property and expended considerable money in keeping same in repair. In addition defendant made no demand upon Beeby during his lifetime or upon his daughter after his death for payment of principal or interest on the mortgage.

In *Kimmel v. Bundy*, 302 Ill. 514, under a comparable factual situation the court said at p. 517:

"It is contended that appellee retained possession of the notes and mortgage of appellant which he held when the deed was made, and that circumstances shows the debt was not satisfied by the conveyance. The notes and mortgage were not delivered to appellant when he made the deed. He testified appellee promised to send them by mail but did not do so, and appears never to have made any demand or request for them. It is difficult to understand why appellee promised to send them to him if they represented an existing indebtedness. In addition to that, appellee testified positively they were paid by the conveyance, and so far as the evidence shows their payment was never afterwards mentioned by either of the parties. The proof shows the consideration paid was the full value of the land at the time."

We have carefully examined all the evidence in the record bearing on the adequacy of the consideration which Beeby received for the quitclaim deed but it would serve no purpose to discuss same except to further lengthen this already long opinion. There can be no question but that Beeby's mortgage indebtedness was satisfied by his quitclaim deed and that defendant assumed the burden of satisfying the numerous liens against the property for general taxes and special assessments. We think that the proof shows that the consideration paid was the full value of the property at the time the quitclaim deed was delivered and that the conclusion reached by the master that the consideration received by Beeby was grossly inadequate was against the manifest weight of the evidence. It is a matter of common knowledge that when this property was conveyed by Beeby to defendant in 1933, many property owners, who were in default as to mortgages and taxes and had no means of paying same,

quitclaimed their property in satisfaction of the mortgage debt and for an additional nominal consideration in order to avoid the possibility of having deficiency judgments entered against them in foreclosure proceedings.

We are impelled to hold that there is no merit in Luella Jane Beeby's claim of interest in the property involved herein and that the trial court erred in entering the decree in plaintiffs' favor.

As an additional reason for reversal defendant contends that plaintiffs were guilty of laches. That they were guilty of laches in instituting this action is conclusively shown by the facts in this case.

Beeby delivered the quitclaim deed to defendant on June 29, 1933. He died April 20, 1934 without making any claim up to the time of his death that said deed was merely given as additional security for his mortgage indebtedness to defendant. As heretofore shown, the real estate involved herein was registered under the Torrens system and plaintiff, Luella Jane Beeby, filed an affidavit prepared by Attorney Hillstrom claiming an interest in the property. This affidavit was dated April 30, 1934 and registered in the Office of the Registrar of Titles May 11, 1934. Hillstrom was named as executor in Beeby's will. He filed the will in the probate court clerk's office on May 4, 1934 but he failed and refused to probate same. He renounced his appointment as executor on May 4, 1941, at which time plaintiff, Edward C. Steinhauer, was appointed administrator with the will annexed. This suit was filed July 30, 1941 and prior to its institution, which was more than eight years after the delivery of the quitclaim deed and more than seven years after Beeby's death, Luella Jane Beeby made no demand on defendant for an accounting nor did she make any inquiry concerning the real estate at any time before this action was brought. Upon the delivery of the quitclaim deed defendant took possession and control of the real estate and thereafter collected the rents, paid

taxes and made repairs. The only person present at the time the quitclaim deed was delivered other than Beeby and the defendant was one Martin Johnson, a notary public, who acknowledged Beeby's signature to the deed. Johnson could not be located at the time of the hearing and he had not been heard from for about four years prior thereto. When the quitclaim deed was delivered to defendant on June 29, 1933, real estate values were low because of the depression and when this suit was filed, more than eight years later, there had been an appreciable increase in the value of the real estate involved herein.

Plaintiffs have shown absolutely no reason to justify their delay in bringing this suit. The master's conclusion, which was confirmed by the chancellor, that plaintiffs were not guilty of laches was predicated primarily on his finding that "within three weeks after the date of the death of James A. Beeby, Luella Jane Beeby filed with the Registrar of Titles of Cook County, Illinois, her affidavit of claim of interest in the premises herein involved; that George R. Hillstrom, the executor named in the will of James A. Beeby, failed, refused and neglected to probate said estate or to renounce his appointment as executor until May 8, 1941; that there has been no change in the situation of the parties since the execution of the quitclaim deed from James A. Beeby to Christine J. Botsford  . .· . and the situation was exactly the same when this litigation was instituted as when the quitclaim deed was executed from James A. Beeby to Christine J. Botsford."

The situation "was not exactly the same" as the master found. The notary public, Johnson, who was the only witness to the transaction, when the quitclaim deed was executed and delivered, had disappeared and was not available to testify at the hearing and the property had substantially increased in value.

It cannot be said that Hillstrom's failure and refusal to probate Beeby's estate or to renounce his appoint-

ment as executor thereof constituted even the slightest excuse for plaintiffs' lack of diligence in commencing this suit. Under the law Hillstrom could have been removed as executor as far back as 1934, because of his refusal to act as such. Hillstrom was a lawyer as well as a real estate broker. He prepared Luella Jane Beeby's claim of interest in the real estate in question and was fully acquainted therewith. Having been named in her father's will as executor of his estate, it is fair to assume that if Hillstrom thought that there was any merit in said claim of interest, which was the only asset of the estate, he would not have neglected for more than seven years to have same adjudicated.

The rule applicable to the factual situation presented here is clearly enunciated in *Capper v. Poulsen,* 321 Ill. 480, where the court said at p. 483:

"Good faith and reasonable diligence of parties seeking the relief of a court of equity are the elements that call it into activity. In the absence of these elements the court remains passive and declines to extend its aid. It has always been the policy of equity to discountenance bad faith and neglect. A party who challenges the title of his adversary to real property must be diligent in discovering that which will avoid the title or render it invalid and diligent in his application for relief. (*Booker v. Booker,* 208 Ill. 529; *Fitch v. Miller,* 200 id. 170; *Walker v. Warner,* 179 id. 16.) Appellants have shown no circumstances which excuse their delay in asserting their claim to these premises, and for this additional reason appellants are not entitled to the relief asked in the cross-bill."

A court of equity will refuse relief after inexcusable delay because of the difficulty, if not the impossibility, of arriving at a safe and certain conclusion as to the truth of the matters in controversy and doing justice between the parties, where evidence has been lost through the disappearance of witnesses to the transaction involved in the suit. (Corpus Juris Secundum, vol. 30, sec. 119, p. 542.) "A marked appreciation

or depreciation, according to the circumstances, in the value of the property involved where the right might have been asserted before such change, and the granting of relief would in consequence of the change work inequity, is ordinarily fatal to plaintiff's case." Corpus Juris Secundum, vol. 30, sec. 118, p. 541.

■ As was said in *Capper v. Poulsen, supra,* "A party who challenges the title of his adversary to real property must be diligent in discovering that which will avoid the title or render it invalid and diligent in his application for relief." Luella Jane Beeby had knowledge of her purported interest in the property in question at the time she filed her claim of interest therein in the office of the Registrar of Titles in 1934 and since no circumstances have been shown which excused her delay in asserting her claim until 1941, plaintiffs are not entitled to the relief sought in the amended complaint.

For the reasons stated herein the decree of the superior court of Cook county is reversed and the cause is remanded with directions to dismiss plaintiffs' amended complaint for want of equity.

*Decree reversed and cause remanded with directions.*

FRIEND, P. J., and SCANLAN, J., concur.