Walter W. Smith, Minnie Smith and Nellie Smith, Appellants, v. Farmers and Merchants Bank of Carlyle, and Joseph H. Schaefer and H. P. Lampen, Trustees, Appellees.

## Term No. 46F4.

Opinion filed May 6, 1946. Rehearing denied October 4, 1946. Released for publication October 5, 1946.

HILL & DOLAN, of Mt. Vernon, and WHAM & WHAM, of Centralia, for appellants.

JOSEPH B. SCHLARMAN and MAURICE B. JOHNSTON, both of Carlyle, for appellees.

MR. PRESIDING JUSTICE STONE delivered the opinion of the court.

This is an action brought by Walter W. Smith, his divorced wife, Minnie Smith, also known as Mrs. R. V. Ramsey, and his present wife, Nellie Smith, plaintiffs appellants, who will be hereinafter designated as plaintiffs, against the Farmers and Merchants Bank of Carlyle, Illinois, Joseph H. Schaefer, and H. P. Lampen, trustees, defendants appellees, who will be hereinafter designated as defendants. In the complaint it is sought to have a warranty deed made and executed by Walter W. Smith and Mrs. R. V. Ramsey, to the Farmers and Merchants Bank of Carlyle, declared to have been given as security for the payment

of a promissory note for $700 owed by said parties to the bank. Plaintiffs also pray for an accounting between the parties.

The amended complaint filed by plaintiffs alleged in substance that Walter W. Smith and Minnie Smith were husband and wife from July 18, 1903 until May 15, 1933, when they were divorced; that in their divorce decree their property rights were not settled; that she still retained an inchoate right of dower in the lands in controversy; that Walter W. Smith and Nellie Smith were husband and wife at the time of the filing of the amended complaint herein, having been married on June 22, 1935; that being the owner of a three-eighths interest in the land in question, they joined by Mrs. R. V. Ramsey, then divorced from him, Smith made, executed and delivered to the Farmers and Merchants Bank of Carlyle, a deed purporting to convey a three-eighths interest; that this deed was not an absolute conveyance but merely security for the payment of a certain indebtedness evidenced by a promissory note in the original sum of $700, then owing by Walter W. Smith and the then Minnie Smith to the Farmers and Merchants Bank of Carlyle; that said conveyance was subject to the inchoate right of dower of plaintiff Nellie Smith.

Said amended complaint further alleged that on August 1, 1940 the said bank wrongfully made a quitclaim deed to J. B. Lampen as trustee and that thereafter the said J. B. Lampen and wife wrongfully executed a quitclaim deed to Joseph H. Schaefer and H. P. Lampen, trustees, and that defendants received rents, benefits and monies far in excess of that required to satisfy the indebtedness claimed to be secured as aforesaid.

To the amended complaint defendants filed their answer admitting the marriage and divorce of the plaintiffs Walter W. Smith and Minnie Smith and the purchase of the land by plaintiff. All other material

allegations were denied. The answer avers that plaintiffs had recognized the ownership of the land in the defendants, and that plaintiffs were guilty of laches.

Upon a trial by the court, the amended complaint was dismissed for want of equity and on June 27, 1945, the trial court approved and entered its final judgment therein. Plaintiffs prosecute their appeal to this court.

The record discloses that subsequent to the acquisition of the property in question by the plaintiff, Walter W. Smith, Paul V. Schaefer and Gordon Houck operated the land as the Kaskaskia River Hunting and Fishing Club, for the purpose of selling membership to various people for hunting and fishing rights. An account handled by Paul V. Schaefer as trustee, was transferred to the Farmers and Merchants Bank. After the bank took over the account Joseph H. Schaefer, president of the bank handled said account and the income and disbursements from said property.

On February 5, 1934 plaintiff Walter W. Smith, being the owner of the three-eighths interest in the land in question, known as the White Oak Island land, consisting of 520 acres, was indebted to defendant, the Farmers and Merchants Bank on several unsecured personal notes, totaling $700. Upon the bank demanding payment, Smith, after some negotiations, joined by his wife, executed a note for $700 and a trust deed conveying the three-eighths interest in said property to said Farmers and Merchants Bank on February 5, 1934. This trust deed was recorded.

Subsequent to the execution of the foregoing note and trust deed, the interest on said note became due and Smith was asked to call at the bank and pay the interest. Smith testified that after several talks about the matter, Joseph H. Schaefer, president of the bank, asked him what he, Smith, could give as collateral, to which Smith replied that he had the three-eighths interest in the White Oak Island property and other

lands and he could have all or any part thereof. Schaefer, according to Smith, said that he would take it up with the directors of the bank and let him know; that Smith returned the next day and Schaefer informed him that he would take the White Oak Island property to secure the bank's note for the $700 whereupon Schaefer drew up the deed and Smith signed it. This was done on June 19, 1935.

Smith further testified that at this conference Schaefer asked where Minnie Smith, divorced wife of Walter W. Smith lived and Smith replied that he did not know her address, but that she lived in Yakima, Washington. His testimony was also to the effect that defendant Joseph H. Schaefer told him at this time that he could get the land back when he paid the note.

Schaefer's testimony is to the effect that Smith told him, after several talks at the bank, that the only thing he could do was to deed him some property in settlement of the note, mentioning several pieces of property, among them the three-eighths interest in the White Oak Island land; that the witness replied that he would take it up with the board of directors of the bank and advise him; that the directors did approve acceptance of the three-eighths interest in the land in question in settlement and liquidation of the note. The minutes of the meeting of the board of directors were admitted in evidence as defendant's exhibit 8. Schaefer further testified that the deed was given to Smith, with the request that he secure his divorced wife's signature, and that the next time he, Schaefer saw the deed it was either returned to him by Smith or Mrs. R. V. Ramsey.

Plaintiff Minnie Smith (Mrs. R. V. Ramsey) testified that she was the divorced wife of plaintiff Walter W. Smith, that she received the deed in question at Yakima, Washington in an envelope of the Farmers and Merchants Bank; that the envelope con-

tained the deed and a letter; that she did not know what became of the envelope or the letter; that the substance of the letter was to the effect that Mr. Smith was in and asked him, (Schaefer) to mail the deed for her to sign as security on the note that she had at the bank; that any time she met her obligation—that is the note paid, she would get the deed back.

Plaintiff Minnie Smith is corroborated to some extent by the deposition of Don Tunstall, an attorney in Yakima, who testified that she came to him for advice, and to take the acknowledgment on the deed, and that when she came to his office she brought a letter from a bank in Illinois.

The evidence discloses that the income from this real estate was small and not sufficient to pay the taxes, and that subsequent to the payment of such taxes, in September 1935, there was no balance remaining in the Kaskaskia River Club account. It appears that defendant Joseph H. Schaefer caused these taxes to be paid.

The evidence further indicates that while plaintiff Walter W. Smith had some income, that after execution of the deed in question he made no payments to the bank on his alleged indebtedness and made no inquiry as to the condition of said alleged indebtedness.

A number of witnesses testified on behalf of the plaintiffs that the property in question was worth from $10 to $15 an acre, while other witnesses called for defendants, testified that it was worth from $4 to $5 an acre. The credibility of these witnesses and the matter of the weight of their testimony, on this conflicting question of fact, was a question for the trial court to determine.

The record further shows that on August 12, 1935, Joseph H. Schaefer, president of the bank and trustee in the trust deed, released that trust deed of record.

It is alleged as error, among other things, that the decree of the court is contrary to the manifest weight

of the evidence, and contrary to equity and good conscience. It is the position of plaintiffs that the warranty deed executed by plaintiffs did not constitute an absolute conveyance, but was given only as additional security for the payment of the indebtedness to the bank on the remaining balance of $668.

 It is legally presumed that an absolute conveyance of real estate is what it purports on its face to be and the burden of proof rests upon the party asserting that the deed absolute is in fact a mortgage or additional security for a mortgage indebtedness and was so intended by the parties. Such proof must be clear, satisfactory and convincing. *Steinhauer v. Botsford*, 327 Ill. App. 296.

██ The intention of the parties is one of the controlling factors in an action to declare a deed absolute on its face to be other than what it purports to be, *i.e.*, security for an existing debt. *Steinhauer v. Botsford, supra.* Thompson on Real Estate, Vol. 9, pages 255 to 306, inclusive, ch. 64, secs. 4880 to 4909, inclusive.

We find little in this record to indicate that the parties by their subsequent conduct, considered this deed to be anything but absolute. In spite of the fact that in 1940, after securing the sum of $2,400 from a leasing of other lands, plaintiff Walter W. Smith did nothing toward paying off the supposed indebtedness at the Farmers and Merchants Bank. Nor did he make any inquiry, nor evidence any interest in the status of that indebtedness, until he instituted the present action.

On August 12, 1935, Joseph H. Schaefer, trustee, released of record the trust deed executed by Walter W. Smith and Minnie Smith. It is reasonable to assume that by so doing defendant Schaefer considered the note paid and the debt extinguished. The minutes of the bank, defendant's exhibit No. 8, indicate that the bank accepted the offer of Walter W. Smith and Minnie Smith to deed the three-eighths in-

terest in the real estate in question in full settlement and liquidation of their debt to the bank.

■ Apparently the property in controversy was not of any appreciable value at the time of the execution of the deed which is questioned. The evidence further indicates that there was insufficient income from the property to pay the expenses from 1935 to 1939. With reference to adequacy of consideration, as we have already said, there was a conflict of testimony in the record. This conflict presented a question of fact for the court. Fraud is never presumed. It is an affirmative matter and must be proved like any other fact. *Mackie v. Schoenstadt*, 307 Ill. 398; *Voris v. McIver*, 339 Ill. 340. There is lacking any evidence of fraud or overreaching on the part of the defendants relating to the transaction with plaintiffs.

For approximately seven years plaintiffs took no steps to assert their claim that the warranty deed executed by Walter W. Smith and Minnie Smith (Mrs. R. V. Ramsey) was not an absolute conveyance, but was given only as security for the payment of the indebtedness due the bank. The rule applicable to this situation is clearly enunciated in *Capper v. Poulsen*, 321 Ill. 480, where the court said at page 483, "Good faith and reasonable diligence of parties seeking the relief of a court of equity are the elements that call it into activity. In the absence of these elements the court remains passive and declines to extend its aid. It has always been the policy of equity to discountenance bad faith and neglect. A party who challenges the title of his adversary to real property must be diligent in discovering that which will avoid the title or render it invalid and diligent in his application for relief. (*Booker v. Booker*, 208 Ill. 529; *Fitch v. Miller*, 200 id. 170; *Walker v. Warner*, 179 id. 16.)" The fact that plaintiffs Walter W. Smith and Minnie Smith have shown no circumstances which would excuse their delay in asserting their claim to the premises, is applicable as well to plaintiff Nellie Smith.

■ ■ The Appellate Court will not reverse the findings of the trial court in a trial without a jury nor of a chancellor where the witnesses are heard by him, unless the findings are manifestly contrary to the weight of the evidence. *People ex rel. Hirsch v. Nagel,* 243 Ill. App. 490; *Stephens-Adamson Mfg. Co. v. Fireman's Fund Ins. Co.,* 257 Ill. App. 443; *Wear Proof Mat Co. v. Bastian-Morley Co.,* 268 Ill. App. 455; *Maton Bros., Inc. v. Central Illinois Public Service Co.,* 269 Ill. App. 99, aff'd 356 Ill. 584. We are not inclined to so hold. We believe that the trial court did not err in dismissing plaintiffs amended complaint for want of equity, and in denying the relief prayed for. The decree of the circuit court of Clinton county is affirmed.

*Affirmed.*

BARTLEY and CULBERTSON, JJ., concur.