(No. 33710.—

ELMA WARNER, Appellant, *vs.* FRANK GOSNELL *et al.,*
Appellees.

*Opinion filed January 19, 1956—Rehearing denied March 19, 1956.*

JAMES G. LINDER, of Georgetown, for appellant.

GOSNELL & FITZPATRICK, of Lawrenceville, (MAURICE E. GOSNELL, of counsel,) for appellees.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

Plaintiff, Elma Warner, filed her complaint in the circuit court of Lawrence County, which complaint was twice amended, the allegations being made up in two counts in the second amended complaint. The defendants in count I were Frank Gosnell, Dessie Crichfield, and Lee Crichfield. The prayer for relief as it appears in count I of plaintiff's second amended complaint asks that a warranty deed, dated February 15, 1946, from plaintiff, her son and his wife, to the defendant Frank Gosnell, to a certain 26-acre tract in Lawrence County, be set aside, the plaintiff be declared to be the sole owner of the 26-acre tract and an accounting be had of farm operations, leasing and royalties by defendant Frank Gosnell, and payment by him to plaintiff of monies received in excess of the sum due for principal and interest on a certain note and other charges that defendant Frank Gosnell may have had to pay on the land.

In count II of plaintiff's second amended complaint the sole defendants were Ohio Oil Company and Calvan Ameri-

can Company. Plaintiff alleged that on June 22, 1953, defendant Frank Gosnell had leased the land in question for oil and gas to one Davidson, who in turn had assigned the lease to Calvan American Company. Thereafter, Calvan American Company pooled said tract of land with adjoining land leased by defendants Dessie and Lee Crichfield, which Crichfield land had a producing oil well on it. The oil from said producing well was sold by Calvan American Company to the Ohio Oil Company. Under the pooling arrangement between the parties, a percentage of the oil and gas royalty from the Crichfield well was the property of the owner of the land in question. The prayer for relief as set forth in count II asks that these two defendants be ordered to immediately pay any monies in their hands due the Crichfields.

The two Crichfields, Dessie and Lee, entered their appearances but did not contest plaintiff's claim. Defendant Ohio Oil Company answered that it was a mere stakeholder and prayed the court to determine those entitled to payment for oil. Defendant Calvan American Company, by answer, asked the court to rule that its lease be binding on whichever party prevails. The answer of defendant Frank Gosnell and the affirmative defenses therein were based upon three theories: (1) that the transaction was not a loan and security transaction but a sale with an agreement to reconvey upon payment of $1,000, and, alternatively, (2) that even if it should be found that the original transaction was a loan and security arrangement, plaintiff abandoned the security and defendant Frank Gosnell destroyed the note, took possession of the land without any claim or demand from plaintiff until the premises increased in value by reason of the discovery of oil on adjacent premises, after which plaintiff filed this suit without warning, notice or demand, and, alternately, (3) that plaintiff was guilty of *laches*.

A hearing was had before the chancellor on the issues

made up on the complaint and several answers. He dismissed the complaint for want of equity.

The interest of defendants Dessie Crichfield, Lee Crichfield, Ohio Oil Company, and Calvan American Company are not being contested in this proceeding and no appeal is taken from that portion of the decree relating to the oil and gas lease of Calvan American Company, which is recognized as being in full force and effect. The issues in this case are confined entirely to the rights of the plaintiff Warner and the defendant Gosnell.

The issues before the trial court upon the basis of the pleadings were three, to-wit: (1) Was the deed from plaintiff Warner to defendant Gosnell an absolute conveyance coupled with an agreement to reconvey upon payment of a sum certain within a specified time or was it in the nature of a mortgage to secure repayment of a loan, (2) if the deed was in the nature of a mortgage, was there an abandonment of the security by grantor after the loan became due and grantor was not able to pay, and (3) was grantor guilty of *laches* in not asserting her right to redeem until after the premises conveyed had increased considerably in value?

In her statement as to how the issues were decided, plaintiff states that this appeal is taken from that part of the decree which held that (1) the transaction between plaintiff and defendant Gosnell was a sale and not a mortgage, (2) that defendant Frank Gosnell is the owner in fee of the 26 acres, (3) that defendant Frank Gosnell is the lessor in oil and gas lease with Calvan American, Inc., (4) that ½ of ⅛ of oil produced belongs to defendant Frank Gosnell instead of plaintiff and (5) that no accounting should be rendered plaintiff. An examination of the decree entered by the circuit court of Lawrence County shows the following among other findings:

"* * * that the equities in this cause are with the

defendants, Frank Gosnell, * * * that Plaintiff's Complaint, as amended, should be dismissed for want of equity, and that the issues of this cause shall be and the same are hereby resolved and determined in favor of Defendant Frank Gosnell, upon his Answer, * * * and against Plaintiff, Elma Warner, upon her Complaint.

"2. That the allegations contained in the Answer of Defendant, Frank Gosnell, to Plaintiff's Second Amended Complaint, * * * shall be and they are hereby found and declared to be true and correct.

"3. That Defendant, Frank Gosnell, is entitled to the relief prayed for in his Answer. * * *

"4. That Defendant, Frank Gosnell, is the owner in fee simple of the premises situated in the County of Lawrence, State of Illinois, described as * * * subject only to that certain oil and gas lease * * *."

Further, said decree ordered, adjudged and decreed as follows:

"1. That Plaintiff's Complaint herein, as amended, shall be and the same is hereby dismissed for want of equity as to each and every one of the Defendants herein named.

"2. That the title in fee simple in and to the premises described in Plaintiff's Complaint, as follows: * * * shall be and the same is hereby found and declared to be in Defendant Frank B. Gosnell and is hereby quieted and confirmed in Defendant, Frank Gosnell, free and clear of any and all claims of every kind or character of Plaintiff, Elma Warner."

From the foregoing it is apparent that the trial court did not decide that this "was a sale and not a mortgage," exclusively, but could have found (1) the transaction was a sale and not a mortgage or (2) the transaction was a mortgage but plaintiff abandoned the security, or (3) plaintiff was guilty of *laches*.

Plaintiff sets forth seven errors relied upon for reversal

but only four are argued. As this court has consistently held in numerous cases, assignments of error not argued are waived.

Plaintiff complains that the trial court erred in not applying the law to the evidence. The conveyance from plaintiff to defendant Gosnell was by warranty deed, which on its face purported to convey a fee simple title. Section 12 of the Mortgage Act (Ill. Rev. Stat. 1953, chap. 95, par. 13,) provides that every deed conveying real estate, which shall appear to have been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage. The burden of proof rests upon the one asserting a deed absolute in form to be a mortgage to show that fact by clear, satisfactory and convincing proof. *Deadman* v. *Yantis*, 230 Ill. 243; *Rankin* v. *Rankin*, 216 Ill. 132; *Novak* v. *Kruse*, 288 Ill. 363.

There can be no question that a deed takes effect from its delivery and that its character at the time of such delivery becomes fixed as of that time. The question whether a deed which is absolute in form is to be taken as a mortgage depends upon the intention of the parties in that regard at the time of its execution. The intention may be found from the papers themselves or by aid of extraneous evidence, which, when ascertained, will govern the decision.

The law is well settled that the true character of the transaction may be shown by parol, and if, upon consideration of the facts, it clearly appears that the deed, though absolute in its form, was taken as security for the payment of money, it will in equity be held a mortgage. "Whether any particular transaction does * * * amount to a mortgage or a sale with a contract of repurchase must to a large extent depend upon its own special circumstances, for the question finally turns, in all cases, upon the real intention of the parties, as shown by the writings or as disclosed by extrinsic evidence * * *. If there is an

indebtedness or a liability between the parties, either a debt existing prior to the conveyance or from any other cause, and this debt is still left subsisting, not being discharged or satisfied by the conveyance, but the grantor is regarded still owing and bound to pay it at some future time, so that the payment stipulated for in the agreement to reconvey is in reality the payment for this existing debt, then the whole transaction amounts to a mortgage, whatever language the parties may have used and whatever stipulations they may have inserted in the instrument." (3 Pomeroy's Eq. Jur. 3d ed. sec. 1195.) The test or criterion, as was stated in the case of *Illinois Trust Co.* v. *Bibo,* 328 Ill. 252, at page 259, "is the continued existence of a debt or liability intended as a security for the debt or indemnity against the liability." If that liability is left as subsisting, and if "the grantor is regarded as still owing and bound to pay it at some future time, * * * then the whole transaction amounts to a mortgage, whatever language the parties may have used and whatever stipulations they may have inserted in the instruments."

The gist of the inquiry in cases of this class is what was the purpose for which the deed was executed; and it will be found, by reference to the cases, that every fact or circumstance tending to illustrate the purpose and intent of the parties is admissible. The fact of an existing indebtedness in respect to which the deed was executed; the retention of the evidence of such indebtedness by the grantee in the deed; that the deed was procured by fraud or oppression or undue advantage; that there was a loan of money; the subsequent conduct of the parties in respect to the land, and, indeed, almost every conceivable state of facts legitimately illustrative of the transaction has been held competent evidence. In some cases, as in *Brown* v. *Gaffney,* 28 Ill. 149, oppression and undue advantage, in connection with the peculiar facts of that case, is made prominent and controlling, and in that and other cases, as

in *Miller* v. *Thomas,* 14 Ill. 428, the inadequacy of price paid is made, under the circumstances there proved, a prominent element in the solution of the question involved.

The first question presented by this record is whether the deed of February 15, 1946, from plaintiff to Frank Gosnell was intended as a security for money advanced by Gosnell or was intended to be an absolute conveyance.

The evidence shows that in February, 1946, Wayman Warner, son and only child of plaintiff, was constructing a building at Birds, Illinois. He needed $1,000 to complete the project. He went to see defendant Gosnell about borrowing such sum, offering the 26 acres of ground belonging to his mother as security. Gosnell refused to loan $1,000 but said he would advance $800. Several days later Wayman again contacted Gosnell. At that time a warranty deed was prepared together with a note for $1,000 due in one year. Wayman Warner and his wife executed both documents while in Gosnell's office. Thereafter Wayman and his wife took both documents to plaintiff's place of employment. After both were executed by her, Wayman and wife delivered them to defendant Gosnell, who gave the $1,000 to Wayman Warner. Shortly thereafter Gosnell recorded the warranty deed, and both plaintiff and her son testified that they had notice of the recording.

The testimony is clear, cogent and convincing that Gosnell never discussed the transaction with plaintiff prior to or at the time of making the loan. Whatever negotiations were had were between Wayman Warner and Gosnell. There is no doubt that Gosnell knew that Wayman Warner needed the money for a business venture and that $1,000 was the sum requested. There is no showing of any discussion of any kind between Gosnell and plaintiff regarding a purchase price for the land or the terms of the loan at the time the loan was completed.

Gosnell testified, "I told him to bring his mother in and give me a warranty deed for the twenty-six acres and that

I'd make a note and at the end of the year if the note was paid off then I'd deed the land back to her." The testimony of Gosnell shows conclusively that he considered the $1,000 still due from the Warners even though the deed had been made, executed, delivered and recorded, thus bringing the transaction clearly within the rule allowing proof to show that the instrument was a mortgage rather than a deed, as set forth in 3 Pomeroy's Eq. Jur. 3d ed. sec. 1195, and *Illinois Trust Company* v. *Bibo,* heretofore quoted.

After considering all of the evidence in the record, we are of the opinion that the weight of the evidence tends more reasonably to uphold the conclusion that at the time the deed was executed the instrument was intended by the parties to be a mortgage to secure the loan of $1,000 rather than a deed conveying a fee simple title on a purchase and sale of the property in question. While there is some conflict in the testimony bearing on this point, we are of the opinion that the proof supporting this conclusion is clear, satisfactory and convincing. The deed given was an equitable mortgage and the relationship created was that of equitable mortgagor and mortgagee. (*Caraway* v. *Sly,* 222 Ill. 203; *Fitch* v. *Miller,* 200 Ill. 170; *Green* v. *Capps,* 142 Ill. 286; *Guffey* v. *Washburn,* 382 Ill. 376.) The legal title was conveyed to defendant Gosnell with an equity of redemption in plaintiff.

Counsel for Gosnell argue that even if the court should find the original transaction was a loan and security arrangement, that plaintiff abandoned the security, defendant Gosnell accepted the abandonment, destroyed the note, took possession of the land without any claim or demand from plaintiff, continued in possession for a long period of time until the premises increased in value by reason of the discovery of oil on adjacent premises, after which plaintiff filed suit without any warning, notice or demand.

The deed took effect from delivery and its character as a mortgage was then established, and it would continue to

be a mortgage until the right of redemption should be barred in some of the modes recognized by law. (*Bearss* v. *Ford,* 108 Ill. 16.) It is unquestionably the law in the State of Illinois that even though land has been transferred by a deed absolute in form, but intended as security for the payment of a debt, the payment of the debt may be abandoned and the deed treated as an absolute conveyance and that such arrangement may be made by parol and be binding. *Hutchison* v. *Page,* 246 Ill. 71; *Cramer* v. *Wilson,* 202 Ill. 83, and cases there cited.

The note fell due February 15, 1947, and was not paid. On February 20, 1947, the business building, in which the borrowed $1,000 had been invested, was destroyed by fire. Only a small part of the loss was covered by the $6,000 insurance on the premises. The record indicates that in April of 1947 defendant Gosnell went to visit plaintiff at her place of employment. There is some conflict as to the conversation had between plaintiff and defendant Gosnell. On direct examination, plaintiff stated that Gosnell said that "Wayman had to pay the note and it was past due, and, of course, I had put what money I had in the building and had not got anything off my land for a year and I just didn't have the money, and I told him I didn't have the money to pay it. He said he wanted to talk to Wayman and he said he might have to take the land." Gosnell, testifying as to what occurred at the meeting, said "I waited until the latter part of April, 1947, and no one came to pay the note off and I went out to the Old Folks Home and saw the matron and asked for Mrs. Elma Warner and she found Mrs. Warner, and she invited me into a room and to sit down and I asked her if she knew the note was due the 15th of February and that it was past due, and she said yes, she knew about it but did not have the money and didn't know where she could get the money and said you will have to take the land, and I said that was more than it was worth, that I didn't want the land, and

she said that is the best that I can do, all I can do. She said you will have to take the land; that is the best I can do." The evidence further indicates that in a week or ten days after the conversation with the plaintiff, in April, 1947, Gosnell destroyed the note, went into possession of the premises, engaged a tenant, paid the taxes, collected the rents and exercised full ownership of the premises. Plaintiff made no suggesttion to Gosnell that she desired additional time to pay the $1,000. Wayman Warner testified that although he received $6,000 in the settlement of the fire loss he did not attempt to pay the $1,000 to Frank Gosnell and have him deed the land back to plaintiff, but paid some outstanding bills and a balance of $1,000 which he owed to the Lawrenceville Savings and Loan Company.

The record is clear that both plaintiff and her son gave no further attention to the 26 acres, received no rents or profits therefrom subsequent to April, 1947, paid no taxes, never visited the land, and allowed the recorded deed to remain unquestioned until oil was discovered some seven years later on the adjoining Crichfield property, when this suit was filed. All of this, in spite of the fact that plaintiff's sister, Dessie Crichfield, and her husband, Lee Crichfield, defendants herein, plaintiff's brother, Carl Stoltz, and other near relatives lived within a very short distance of the land in question, knew Frank Gosnell was claiming to own it, and farming same through tenants.

It further appears from the record that in 1949 Wayman Warner sold his business at Birds. At the time of the sale plaintiff was paid the sum of $1,000 by Wayman in the form of a promissory note which was given her by the purchasers of the business.

We think it clear, from a consideration of all the testimony, that the parties intended the equitable encumbrance of $1,000 to be satisfied by the deed of February 15, 1946. The conduct of the parties since the conversation of April, 1947, has been wholly inconsistent with any other under-

standing. Under the circumstances the chancellor was justified in concluding that the defendant Gosnell had clearly sustained the burden of showing the degree of fairness which the law requires. We find nothing in the record to justify the claim that fraud, undue and oppressive influences were used by Frank Gosnell.

On the third issue, that plaintiff has been guilty of *laches*, we have carefully reviewed the pleadings of plaintiff but no facts are presented therein which tend in any way to excuse the delay in commencing the proceedings to redeem. As Frank Gosnell set up *laches* in his answer as an affirmative defense to the right to redeem, it then devolved upon the plaintiff to allege a reason or excuse for her *laches*. From the record before us, the trial court could have reasonably and fairly found that plaintiff was guilty of *laches*.

The courts of this State have many times repeated that where a chancellor receives the evidence in open court and sees the witnesses and hears them testify, his findings will not be disturbed unless palpably wrong or manifestly erroneous. (*Hall* v. *Pittenger*, 365 Ill. 135; *Page* v. *Keeves*, 362 Ill. 64; *Greer* v. *Carter Oil Company*, 373 Ill. 168.) Considering all the facts in the record, the disputed testimony as to the purpose and intention of the parties regarding the nature of the transaction at the time the deed was taken, and the conduct of the parties subsequent to maturity of the note, we are unable to say that the trial court committed any manifest error. We must, therefore, conclude that the court below did not err in dismissing the complaint for want of equity.

The decree of the circuit court of Lawrence County is affirmed.

*Decree affirmed.*