Dorothy M. Daulton, Plaintiff-Appellant, v. Clifton H. Walsh, Defendant-Appellee.

Gen. No. 11,254.

Second District, Second Division.

April 17, 1959.

Rehearing denied May 6, 1959.

Released for publication May 6, 1959.

J. P. Wilamoski, of Kewanee, and Shaw & Chamberlain, of Geneseo, for appellant.

Harper Andrews and Campbell Andrews, of Kewanee, for appellee.

PRESIDING JUSTICE WRIGHT delivered the opinion of the court.

This is an action by the plaintiff to have a deed, absolute on its face, declared to be a mortgage, for an accounting by the mortgagee in possession and redemption by the mortgagor. The trial court found that the evidence did establish the deed to be a mortgage, but that the plaintiff mortgagor had lost her equity of redemption by reason of laches. The suit was dismissed for want of equity on the ground of laches and a motion to set aside and vacate the decree was overruled, from which ruling this appeal is taken.

Plaintiff contends that the trial court erred in invoking the equitable doctrine of laches on behalf of

the defendant and that there were sufficient facts and reasons to excuse plaintiff from the strict application of the doctrine. Defendant contends that the deed to the defendant and the contract with plaintiff showed that the deed was not intended to be a mortgage. Defendant also contends that he rightfully declared a forfeiture in accordance with the contract so that plaintiff had no right to redeem and that if plaintiff had a right to redeem it was barred by the delay of more than ten years after the default by plaintiff in payment of taxes and monthly payments. Defendant further argues that the plaintiff abandoned and released her rights by her conduct towards him with respect to the property on her return to Kewanee about 1946 and her conduct under the circumstances constituted laches.

Plaintiff was married to Eugene King in 1940 and they purchased the land in question on a contract in April 1940, and it was conveyed to them in joint tenancy in 1942. At the time the Kings purchased the lot, it was improved with a two-room house, with a chicken house in back. In June of 1943, Mrs. King was divorced from her husband who had gone to California leaving her in financial straits. He returned to Kewanee in August 1943, having secured a job in California and Mrs. King agreed to return there with him where they were remarried. In 1945 she obtained a second divorce, which became final in May, 1946. Plaintiff and James Daulton were married on July 24, 1946, and have lived in Kewanee since February, 1947. Some time prior to August 31, 1943, after Mr. King's return from California, the Kings got in touch with the defendant, a real estate broker who makes loans, for the purpose of borrowing money to finance their move to California. On August 31, 1943, the arrangements were completed by the defendant loaning Kings $175 in return for which the Kings con-

veyed the property in question to defendant and entered into a written contract with him to purchase the property for the same amount.

The contract for the sale of the real estate to plaintiff by defendant provided that the defendant agreed to convey the tract to Eugene C. and Dorothy M. King for $175, payable $10 on October 1, 1943, and $10 on the first of each month thereafter, with interest at six per cent per annum payable monthly. The written agreement signed by the Kings and defendant also required the Kings to pay all general taxes and special assessments and to keep the property insured with loss payable to the parties as their interests may appear. Defendant was authorized to collect the rents and apply the same less $1 per month for collection to payment of the sum due from the Kings under the contract and to keep the place in reasonable repair. The agreement provided that time of payment shall be the essence of the contract and that in case of failure by the Kings to make the payments required, the contract shall at defendant's option be forfeited and determined, and all payments made shall be retained by defendant in full satisfaction and in liquidation of damages sustained by him.

About a week later the Kings did leave for California and the defendant entered into possession which he still holds. The property was vacant for about a half of a year and was rented to a Mrs. Otis for $10 a month early in 1944. Plaintiff testified that before she left Kewanee she had given the defendant the address of her husband's father in California and that he was to get in touch with them at that address. The defendant denied this and insisted that he had no means of knowing the Kings' whereabouts after they left Kewanee.

After the execution of the deed and contract in August, 1943, there was no communication between

293

plaintiff and defendant until July, 1946 when plaintiff came to defendant's office and told him that she wanted to settle the contract and defendant told her that the place was his and not to cause him any trouble. She caused him no trouble and made no demands upon defendant until she commenced this action in December, 1954. Eugene King died in 1953. None of the taxes or insurance premiums, and none of the payments due on the contract were ever paid by the Kings or anyone for them. Plaintiff, in her testimony, never explained why she took no action after she returned to Kewanee and was told by the defendant that he claimed the property as his own and that the contract was forfeited.

Defendant testified that the property was worth $300 to $400 in 1943, and that he had the buildings insured for $500 at first, and recently for $1000 and paid all insurance premiums; that the taxes for 1942 were in default and he redeemed the property for $46.74, and that he paid all general taxes from 1943 to 1958, and ten water-main assessments of $23.79 each; that from 1943 to 1947 or 1948 he collected about $100 in rents, and a total of about $895 to date and from 1943 to 1954 he paid out more than he collected. Defendant stated he didn't remember exactly what he received, had no records and refused to state the amount of his expenses; that in 1946 or 1947 when plaintiff came to defendant's office, he told her that she had lost the contract by default and that she said that she didn't care "as long as the Kings didn't get anything out of it." This testimony by the defendant was uncontradicted. Defendant further testified that the Kings sold him the property for $175, but he also stated that the Kings wanted to borrow some money, that he "loaned them the money" and gave them the contract, and that they made a contract "to reimburse the loan."

294

■ The first question presented by this record is whether the deed of August 31, 1943, from the Kings to defendant was security for the money advanced by defendant or an absolute conveyance. Section 12 of the Mortgage Act (Ill. Rev. Stat. 1953, chap. 95, par. 13), provides that every deed conveying real estate, which shall appear to have been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage. The burden of proof rests upon the one asserting a deed absolute in form to be a mortgage to show that fact by clear, satisfactory and convincing proof. Deadman v. Yantis, 230 Ill. 243, 82 N. E. 592.

■ There can be no question that a deed takes effect from its delivery and that its character at the time of such delivery becomes fixed as of that time. Whether a deed which is absolute in form is to be taken as a mortgage depends upon the intentions of the parties in that regard at the time of its execution. The intention may be found from the papers themselves or by aid of extraneous evidence, which, when ascertained, will govern the decision. Warner v. Gosnell, 8 Ill.2d 24, 132 N.E.2d 526.

■ After considering all of the evidence in the record, we are of the opinion that the evidence tends more reasonably to uphold the conclusion that the deed was intended by the parties to be a mortgage to secure the loan, rather than a deed. In fact the proof is clear, satisfactory and convincing that the deed given was an equitable mortgage. The relationship created was that of equitable mortgagor and mortgagee, Caraway v. Sly, 222 Ill. 203, 78 N. E. 588, and the legal title was conveyed to defendant with an equity of redemption in the Kings, Warner v. Gosnell, supra.

The deed took effect from delivery and its character as a mortgage was then established, and it would

continue to be a mortgage until the right of redemption should be barred in some of the modes recognized by law, Bearss v. Ford, 108 Ill. 16. The trial court found that the plaintiff was in substance seeking to redeem an equitable mortgage and that she was barred by laches. It is to this question that we now turn our attention.

No specific statute governs the time within which a mortgagor must commence an action to redeem. The earlier cases adopted the rule that the right of the mortgagor to redeem is reciprocal with the right of the mortgagee to foreclose, and a statute of limitations which bars the latter will also bar the former. Sec. 11, chap. 83, Ill. Rev. Stat. provides that an action to foreclose a mortgage shall be brought within ten years after the right of action accrues. In Jackson v. Lynch, 129 Ill. 72, 21 N. E. 580, which was a case that construed a deed absolute to be a mortgage, the court stated that no definite rule was ever laid down as a limitation of time upon the right of the mortgagor to redeem from a mortgagee in possession until the case of Locke v. Caldwell, 91 Ill. 417, and that prior to such case the question seemed to be determined not so much upon any statute of limitation as upon the circumstances and equities surrounding each particular case. In Locke v. Caldwell supra, the court held that the law of limitations as to the right of a mortgagee to foreclose and that of a mortgagor to redeem are mutual and, therefore, the court in the Jackson case, supra, held that the right of redemption was not barred by less time than the right of foreclosure.

In the recent case of Warner v. Gosnell, supra, the Illinois Supreme Court was called upon to pass on the question of laches as a bar to the right of redemption wherein an absolute deed was declared to be a mortgage. In the Warner case, supra, plaintiff conveyed by absolute deed a twenty-six acre tract to the

defendant in 1946 to secure a loan of $1,000 due in February, 1947. In April, 1947, plaintiff informed the defendant that she did not have the money and defendant would have to take the real estate. A short time thereafter, defendant went into possession of the real estate, paid the taxes, collected the rents and exercised full ownership of the property. Plaintiff paid no further attention to the real estate or to the defendant until oil was discovered some seven years later and she instituted a suit to recover title to the land. The court held that the deed was intended to secure a debt, that defendant promised to reconvey upon payment of the debt and the deed therefore constituted a mortgage but that under the evidence plaintiff had abandoned the security. Defendant's third defense to the action of the plaintiff was that she was guilty of laches and the Supreme Court in passing upon this point stated at page 36 of 8 Ill.2d and page 532 of 132 N.E.2d:

"On the third issue, that plaintiff has been guilty of *laches,* we have carefully reviewed the pleadings of plaintiff but no facts are presented therein which tend in any way to excuse the delay in commencing the proceedings to redeem. As Frank Gosnell set up *laches* in his answer as an affirmative defense to the right to redeem, it then devolved upon the plaintiff to allege a reason or excuse for her *laches.* From the record before us, the trial court could have reasonably and fairly found that plaintiff was guilty of *laches.*"

Despite the case of Jackson v. Lynch, supra, to the contrary, it appears from more recent decisions, and in particular from the decision in Warner v. Gosnell, supra, that the right to redeem can be lost in less time than the right to foreclose by failure to take action for seven years. This court in 1952 in Robison v. Moorefield, 347 Ill. App. 508, 107 N.E.2d 278, held that the doctrine of laches should apply under the

circumstances of the case and bar plaintiff from the right to redeem where there was a delay of six years. In 1945, the Appellate Court, First District, in Steinhauer v. Botsford, 327 Ill. App. 296, 64 N.E.2d 187, held that a delay of eight years was sufficient to constitute laches to bar the right of redemption. In the Robison case, supra, in discussing the question of laches as a bar this court previously stated the rule to be at page 531 of 347 Ill. App. and page 288 of 107 N.E.2d:

"Appellee further contends that the doctrine of laches should in itself prevent recovery. She contends that it is obviously unfair for the plaintiff after the real estate in question had become greatly enhanced in value to now claim that he is mortgagor and entitled to redeem. A recent case, Steinhauer v. Botsford, 327 Ill. App. 296, 64 N.E.2d 187, involved a suit to redeem from a deed alleged to have been given as a mortgage. The suit was filed eight years after the execution of the deed. The court said in substance: that it was inequitable to permit the party to wait that long a time to determine whether the property would enhance or depreciate in value and held that laches barred the relief. The doctrine of laches may be invoked after varying lengths of time depending on the facts in the case involved. In Capper v. Poulsen, 321 Ill. 480, 152 N. E. 587, 588, the court says: 'It has always been the policy of equity to discountenance bad faith and neglect.' In that case the court held that delay barred redemption by one who claimed that a deed was in fact a mortgage. In the instant case the delay was more than six years and we believe that the application of the doctrine of laches under the circumstances contained in the record should bar plaintiff from the right to redeem."

■ ■ In the case now before us, the Kings were required under the terms of the contract to pay the real estate taxes, yet, the real estate had been sold for taxes at the time the deed and contract were executed and the Kings at no time thereafter paid any taxes, special assessments or payment on principal or interest. Therefore, defendant could have instituted foreclosure suit on October 1, 1943, and plaintiff's right to redeem would have been barred in October, 1953. This would be so even under the strict application of the rule in the case of Jackson v. Lynch, supra. However, to make matters even worse as far as the plaintiff is concerned she took no action whatsoever until sometime in 1946 when she then told the defendant that she didn't care about the property "as long as Kings didn't get anything out of it." Thereafter, she lived in the same city where the real estate was located and where the defendant resided and she took no action or interest in the real estate until the property had increased in value. Defendant, in his answer, alleged that the plaintiff was guilty of laches and she did not prove any excuse or explain her delay in asserting her claim. As was stated in Warner v. Gosnell, supra, it was the duty of the plaintiff to give a reason or excuse for her laches or delay. She has failed to do this and the trial court rightfully found that she was guilty of laches and that the equities were with the defendant.

The trial court saw, observed and heard the plaintiff, defendant and other witnesses testify and as has been oft repeated by our courts, the trial judge is in a much better position to pass on the credibility of the witnesses and determine the facts than is a court of review.

Our Supreme Court in passing upon very similar questions again reiterated the rule that the trial judge

in such a case as this was in a better position to determine the facts and therein stated in Warner v. Gosnell, supra, at page 36 of 8 Ill.2d and page 532 of 132 N.E. 2d, as follows:

"The courts of this State have many times repeated that where a chancellor receives the evidence in open court and sees the witnesses and hears them testify, his findings will not be disturbed unless palpably wrong or manifestly erroneous. (Cases cited) Considering all the facts in the record, the disputed testimony as to the purpose and intention of the parties regarding the nature of the transaction at the time the deed was taken, and the conduct of the parties subsequent to maturity of the note, we are unable to say that the trial court committed any manifest error. We must, therefore, conclude that the court below did not err in dismissing the complaint for want of equity."

The trial court in the instant case, after hearing the evidence and observing the parties and witnesses, found and so stated in a thorough and well considered memorandum included in the record that the plaintiff was guilty of laches and we believe that this finding is supported by the evidence in the record.

For the reasons herein stated, the decree of the Circuit Court of Henry County is hereby affirmed.

Decree affirmed.

CROW and SOLFISBURG, JJ., concur.